**Petition for Writ of Mandamus Denied and Opinion filed June 22, 2016.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

### NO. 14-16-00227-CV

### IN RE BARRE MORRIS, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**309th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-01835**

## O P I N I O N

This mandamus proceeding stems from a family court's refusal to render judgment on a mediated settlement agreement between two parents who agreed to rendition of an order terminating the mother's parent-child relationship. We address as an issue of first impression whether such an agreement precludes a trial court from refusing to render judgment based on the plaintiff's failure to prove by clear and convincing evidence that termination would be in the child's best interest. The relator, the adjudicated father of the child, asks this court to compel the Honorable

Sheri Y. Dean, presiding judge of the 309th District Court of Harris County, to (1) vacate her order denying rendition of judgment in accordance with a mediated settlement agreement in which the child's parents agreed to an order terminating the parent-child relationship between the child and the child's mother, Victoria Barrientes-O'Neil, and (2) render judgment in accordance with the mediated settlement agreement. Concluding that a mediated settlement agreement does not preclude the trial court from making a best-interest determination under section 161.001(2) of the Texas Family Code and that the relator has not shown the trial court clearly abused its discretion, we deny mandamus relief.

## I.   BACKGROUND

In an original custody order signed at the end of 2004, the trial court named the relator and the child's mother joint managing conservators of the child. A decade later, the child's mother signed a document entitled "*Mother's Affidavit of Voluntary Relinquishment of Parental Rights.*" In the affidavit, the mother states that termination of the parent-child relationship is in the child's best interest, but she provides no facts to support that conclusion. In the affidavit, the mother waives her right to service of citation and all other process in any suit to terminate her parental rights to the child, but the affidavit does not contain any express statement that the mother relinquishes or waives her parental rights.

In January 2015, the relator filed an "Original Petition to Terminate Parent-Child Relationship," in which the relator sought an order terminating the parent-

2

child relationship between the mother and the child.[1]  The only ground on which the relator sought this relief was that the mother had executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161 of the Texas Family Code and that termination of the parent-child relationship would be in the child's best interest.  *See* Tex. Family Code Ann. § 161.001(1)(K),(2) (West Supp. 2015).  The mother's affidavit is attached as an exhibit to the petition.

In April 2015, the two parents attended mediation with their attorneys, and all signed a Mediated Settlement Agreement, which states that "the terms of settlement are to enter the order of termination as attached as Exhibit A."  The proposed order attached as Exhibit A provides that "the parental-child relationship between [the mother] and the child the subject of this suit is terminated." Neither in the Mediated Settlement Agreement nor in the attached proposed order does the mother agree that the termination of her parental rights is in the best interest of the child.

The relator filed the Mediated Settlement Agreement with the trial court.  He then appeared at a hearing to prove the terms of the Mediated Settlement Agreement and requested the trial court to render judgment on the Mediated Settlement Agreement.[2]  The only evidence offered at the hearing was testimony by the relator as to (1) the relator's name, (2) the child's name, (3) the mother's name, (4) the execution of the Mediated Settlement Agreement by the relator and the mother, and

---

[1] The case was originally assigned to the 247th Judicial District Court but was transferred to the 309th Judicial District Court.

[2] In his arguments, the relator seeks to have the trial court "enter judgment" on the Mediated Settlement Agreement.  Trial courts render judgments; clerks enter them.  *Burrell v. Cornelius*, 570 S.W.2d 382, 384 (Tex. 1978).  Therefore, we understand relator to be arguing that the trial court should render judgment on the Mediated Settlement Agreement rather than enter such a judgment.  *See id.*

(5) the relator's request that the trial court enforce the Mediated Settlement Agreement. At the relator's request, the trial court took judicial notice of the Mediated Settlement Agreement. The relator offered no testimony that termination of the mother's parent-child relationship would be in the child's best interest. The trial court took the matter under advisement.

The trial court signed an order denying rendition of judgment on the Mediated Settlement Agreement. In the order the trial court explains the basis of its ruling as follows:

> The Court having reviewed the pleadings and the statutory requirements under § 153.0071(d only), and Chapter 161 of the Texas Family Code, finds that the statutory requirements for parental termination have not been met by the Mediated Settlement Agreement and thus the Court Denies the entry of the Mediated Settlement Agreement. The Court further finds that granting an order based on the Mediated Settlement Agreement and the parties['] agreement will serve to circumvent well established, mandatory procedures and rules, and interferes with this Court's obligation to comply with the mandatory provisions of said statutes.

The relator filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, the relator asks this court to compel the presiding judge of the 309th District Court to vacate her order denying rendition of judgment in accordance with the Mediated Settlement Agreement in which the parties agreed to an order terminating the parent-child relationship between the child and his mother, and render judgment in accordance with the Mediated Settlement Agreement.

4

## II.  MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). With respect to resolving factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court reasonably could have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding). In other words, we give deference to a trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv.*, L.P., 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

## III.  ANALYSIS

The relator argues that the trial court clearly abused its discretion by not rendering judgment terminating the parent-child relationship between the mother and the child in accordance with the Mediated Settlement Agreement.

5

**A. On this record, the trial court reasonably could have found that the relator failed to meet the requirements of Family Code section 161.001.**

In its order, the trial court found that the Mediated Settlement Agreement did not meet the statutory requirements for termination of the parent-child relationship under Chapter 161 of the Texas Family Code. Section 161.001(1) provides in relevant part that a trial court may terminate the parent-child relationship if the court finds by clear and convincing evidence that (i) the parent has executed "an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by this [C]hapter," **and** (ii) "termination is in the best interest of the child." Tex. Fam. Code Ann. § 161.001(1)(K); *id.* § 161.001(2) (emphasis added). Thus, for the court to terminate the mother-child relationship, the statute's plain language requires both an affidavit of relinquishment and clear and convincing evidence that termination is in the child's best interest. "This provision requires proof of both elements; the proof of the first does not excuse proof of the second." *Byrne v. Catholic Charities, Diocese of San Angelo, Inc.*, 710 S.W.2d 780, 782 (Tex. App.—Austin 1986, no writ) (interpreting Tex. Fam. Code Ann. § 15.02, the identically worded predecessor to § 161.001). The signing of an affidavit of relinquishment does not affect the requirement that the trial court must find that termination is in the child's best interest. *Terrell v. Chambers*, 630 S.W.2d 800, 803 (Tex. App.—Tyler 1982), writ ref'd n.r.e., 639 S.W.2d 451 (Tex. 1982).

This court has recognized that an affidavit of relinquishment suffices as evidence on which the trial court may make a finding that termination of the relinquishing parent's rights is in the child's best interest. *See In the Interest of A.L.H.*, 468 S.W.3d 738, 741–42 (Tex. App.—Houston [14th Dist.] 2015, no pet.);

6

*In re A.G.C.*, 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.). But, this court has not held that an affidavit of relinquishment requires the trial court to find that terminating the parent-child relationship would be in the child's best interest or that an affidavit of relinquishment by itself proves that fact as a matter of law.

To show an abuse of discretion, the relator must establish that the trial court reasonably could have reached only one decision and not the decision the trial court made. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). The only evidence upon which the relator relied is the Mediated Settlement Agreement, in which the mother agreed to a court order stating that she had executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161 of the Texas Family Code. The affidavit is attached to the relator's petition and contains only the mother's bare statement that termination of the parent-child relationship is in the child's best interest; it provides no facts to support that conclusion. The Mediated Settlement Agreement is merely an agreement by the parties for the court to sign an order that terminates the relationship between the mother and the child. The relator did not testify that termination of the mother-child relationship would be in the best interest of the child or to any facts that would support that conclusion under the *Holley* factors.[3] Except for proving up the

---

[3] Texas courts typically utilize the so-called *Holley* factors in cases requiring a best-interest analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any

Mediated Settlement Agreement, the relator did not testify as to any grounds for termination stated in section 161.001(1).

The relator did not attempt to prove by clear and convincing evidence that the mother had executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161 of the Texas Family Code and that termination of the parent-child relationship between the mother and the child would be in the child's best interest. *See* Tex. Family Code Ann. § 161.001(1)(K),(2). Rather, the relator sought an order terminating the mother's parental rights based only upon the Mediated Settlement Agreement. We conclude that with this bare record, the trial court reasonably could have determined that the relator did not carry his burden under section 161.001(2) to prove by clear and convincing evidence that termination of the mother-child relationship would be in the child's best interest. The trial court had discretion to require the relator to offer additional evidence to meet the clear-and-convincing-evidence standard. Thus, the relator has not established that the trial court clearly abused its discretion in finding that the parties failed to meet Chapter 161's requirements.

## B. Family Code section 153.0071(e) does not apply to suits to terminate a parent-child relationship under Chapter 161 of the Family Code.

We also consider whether section 153.0071(e) of the Family Code required the trial court to render judgment terminating the parent-child relationship in accordance with the Mediated Settlement Agreement. Section 153.0071(e) provides that if a mediated settlement agreement meets the requirements of subsection (d), a

---

excuse for the acts or omissions of the parent. *Id.*; *In re S.A.H.*, 420 S.W.3d 911, 926 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

party is entitled to judgment on the mediated settlement agreement. Tex. Fam. Code Ann. § 153.0071(e) (West Supp. 2015). In *In re Lee*, the Supreme Court of Texas held that the specific provisions of section 153.0071(e) prevailed over the general best-interest standard in section 153.002 and that section 153.0071(e) prohibits a trial court from denying a motion to render judgment on a properly executed Mediated Settlement Agreement based on a broad best-interest inquiry. *See* 411 S.W.3d 445, 453–58 (Tex. 2013). But, *Lee* involved a Mediated Settlement Agreement in a suit to modify a child-conservatorship order under Chapter 153, not a suit to terminate a parent-child relationship under Chapter 161 of the Family Code.

The supreme court in *Lee* did not address whether section 153.0071(e) applies to a suit to terminate a parent-child relationship brought under Chapter 161 or whether a mediated settlement agreement in a termination suit relieves the plaintiff of the burden of proving by clear and convincing evidence that termination would be in the child's best interest, as required by section 161.001(2). No Texas court appears to have answered these questions.

### 1. *Applying section 153.0071(e) to termination of parental rights would render portions of section 161.001 meaningless.*

The statutes governing termination of parental rights and the statutes relating to conservatorship differ in significant ways. One big difference is that section 161.001[4] provides that a court may order termination of parental rights only upon finding that a circumstance listed in subsection one has been satisfied and that the

---

[4] Although section 161.001 is entitled "Involuntary Termination of Parent-Child Relationship," the text of section 161.001 indicates it applies to all terminations. *See* Tex. Fam. Code § 161.001; *In re A.G.C.*, 279 S.W.3d 441, 445-46 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

9

termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001. As a general principle, we eschew constructions of a statute that render any part of the statute meaningless or superfluous. *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015). If provisions of a single statute appear to conflict, we try to harmonize them to effectuate both by assigning each a meaning that will permit both to stand. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Texas Dept. of Pub. Safety v. J.H.J.*, 274 S.W.3d 803, 808 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We are not to assign a meaning to one statutory provision that would be inconsistent with other provisions of the same act even if the provision, standing alone, might be susceptible to such a construction. *See Helena Chem. Co.,* 47 S.W.3d at 493; *Texas Dept. of Pub. Safety*, 274 S.W.3d at 808.

The Mediated Settlement Agreement states that "the terms of settlement are to enter the order of termination as attached as Exhibit A." Rendering orders, of course, is the office of courts, not contracting parties. *See Burrell v. Cornelius*, 570 S.W.2d 382, 384 (Tex. 1978). But, contracting parties may agree to submit a proposed order to a court and request the court to sign the proposed order, and we interpret the parties' Mediated Settlement Agreement to mean that the two parents agree to submit to the court for rendition the proposed order of termination attached as Exhibit A to the Mediated Settlement Agreement.

The proposed order attached as Exhibit A provides that the parent-child relationship between the mother and the child is terminated. The mother's "Affidavit for Voluntary Relinquishment of Parental Rights" states, "I understand that I make this termination possible by executing this affidavit." Thus, the affidavit, like the Mediated Settlement Agreement, reflects the mother's consent to the

10

termination. That is not enough under section 161.001, which requires clear and convincing evidence of both an affidavit of relinquishment and that termination would be in the child's best interest. Tex. Fam. Code Ann. § 161.001(1)(K) (West Supp. 2015); *id*. § 161.001(2). Because there is no meaningful difference between the Mediated Settlement Agreement and the affidavit of relinquishment, interpreting section 153.0071(e) to require termination solely because of the mother's consent in the Mediated Settlement Agreement would put section 153.0071(e) into conflict with section 161.001, which additionally requires a finding by the court based on clear and convincing evidence that termination would be in the child's best interest. This interpretation also would render subsection (b) of section 161.001 (which requires this finding) meaningless as applied to this case. We can harmonize these statutes by interpreting section 153.0071(e) not to apply to suits for termination under Chapter 161. No language in section 153.0071(e) precludes this interpretation.

### 2. *Section 153.0071(e) does not contain language indicating broad application to all suits affecting the parent-child relationship.*

The Texarkana Court of Appeals addressed this issue of interpretation in *In the Interest of K.D.*, 471 S.W.3d 147 (Tex. App.—Texarkana 2015, no pet.), a case in which the Department of Family and Protective Services brought suit to terminate the mother's parental rights under Chapter 161, and the trial court rendered judgment terminating the relationship in accordance with a mediated settlement agreement. *See id.* The court of appeals concluded that the Texas Legislature did not intend for section 153.0071(e) to apply to parental-termination suits under Chapter 161 and that the court therefore was not bound by section 153.0071(e) and the mediated settlement agreement to find that termination of the mother's parental rights would

11

be in the child's best interest; the Department still was required to prove by clear and convincing evidence that termination was in the child's best interest. *Id*. at 171–74.

The *K.D.* court reached this conclusion based on the "suit affecting the parent-child relationship" language that appears in subsection (c) but that does not appear in subsection (e) of 153.0071. Explaining the significance of these differences in statutory text, the *K.D.* court stated:

> Section 153.0071(c) states, "On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation." TEX. FAM. CODE ANN. § 153.0071(c) (West 2014). By contrast, Section 153.0071(e) states, "If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE ANN. § 153.0071(e). Thus, Section 153.0071(c) identifies those cases that may be submitted to mediation. From that subset of cases properly submitted to mediation and in which a mediated settlement agreement results, Section 153.0071(e), in turn, identifies those cases in which the trial court's duty to conduct a best-interest review is eliminated, indeed, in which the trial court's ability to conduct such a review is foreclosed.
>
> **Noticeably absent from subsection (e)—which is present in subsection (c)—is the language "suit affecting the parent-child relationship."** Section 101.032 defines a "suit affecting the parent-child relationship" as "a suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." TEX. FAM. CODE ANN. § 101.032(a) (West 2014). The phrase "this title" in Section 101.032(a) refers to Title 5 of the Family Code, and parental-rights termination cases are contained within Title 5. Therefore, any suit under Title 5, including parental-rights termination cases brought by the Department, can be referred to mediation under Section 153.0071(c), but not every

suit referred to mediation under Title 5 produces a mediated settlement agreement that forecloses the trial court's best-interest review under Section 153.0071(e).

*Id*. at 171–72 (emphasis added).

According to the *K.D.* court, "[t]he question then becomes which cases referred to mediation under Title 5 produce a mediated settlement agreement that forecloses the trial court's best-interest review under Section 153.0071(e)." *Id*. at 172. The court, concluding that section 153.0071(e) did not apply to parental-termination cases under Chapter 161, explained:

Because Section 153.0071(e) is located within Chapter 153 and does not include the statutory language "suit affecting the parent child relationship" and because Chapter 153 only involves suits for conservatorship, possession, and access to children, then only cases for conservatorship, possession, and access to children that are referred to mediation under Section 153.0071(c) can produce a mediated settlement agreement that forecloses the trial court's best-interest review. Because termination cases are governed by Chapter 161, Section 153.0071(e) would not apply to such cases. Therefore, Section 153.0071(c) and (e) can be interpreted to mean that any suit under Title 5, including a parental-rights termination suit, may be referred to mediation, but only those suits for conservatorship, possession, and access that produce a mediated settlement agreement can eliminate the trial court's best-interest review. If the Legislature had intended Section 153.0071(e) to apply to cases under Chapter 161, it could have written Section 153.0071(e) to read, "If a mediated settlement agreement [*in a suit affecting the parent-child relationship*] meets the requirements of Subsection (d)...." The absence of that language is evidence that the Legislature did not intend Section 153.0071(e) to apply to cases under Chapter 161.

*Id*.

13

The Supreme Court of Texas, in *Richardson v. Green*, 677 S.W.2d 497, 498 (Tex. 1984), used this statutory-interpretation approach and similar reasoning in affirming its jurisdiction to review appellate court judgments in parental-rights termination cases. *Id.* at 173. In that case, the mother challenged the supreme court's jurisdiction to hear the case "because the 1983 amendment of article 1821(3), Tex. Rev. Civ. Stat. makes judgments of the courts of appeal final in all cases of child custody, support or reciprocal support." *Id.* (citing *Richardson*, 677 S.W.2d at 499-500). The mother argued that because "actions to terminate parental rights are child custody cases," article 1821(3) eliminated the Supreme Court of Texas's jurisdiction over such cases. *Id.* The high court disagreed, reasoning:

> Custody and termination actions are governed by separate Chapters in Title 2 [now Title 5] of the Family Code. *See* TEX. FAM. CODE ANN. chs. 14, 15 (Vernon Supp. 1984) [now Chapters 153 and 161]. If the legislature had intended the 1983 amendment to encompass all actions under Title [5] of the Family Code, it would have stated: "all cases of divorce, or suits affecting the parent-child relationship" instead of limiting the exclusion of jurisdiction to "or child custody, support, or reciprocal support." We therefore hold that Article 1821(3) does not include involuntary termination of parental rights actions and that the Supreme Court of Texas continues to have jurisdiction to review court of appeals' judgments in such cases.

*Richardson*, 677 S.W.2d at 500. Thus, the Supreme Court of Texas found that the absence of the language "suits affecting the parent-child relationship" in the statute limiting judicial review indicated a legislative intent that the limitation not apply to parental-termination cases. *K.D.*, 471 S.W.3d at 173.

Because section 153.0071(e) is located within Chapter 153 (which governs suits for conservatorship, possession, and access to children) and the Legislature

14

chose to include no similar provision in Chapter 161 (which governs suits for the termination of a parent-child relationship), we cannot conclude that the Legislature intended section 153.0071(e) to apply to termination suits under Chapter 161.

### 3. Key differences between termination provisions and conservatorship provisions support an interpretation that requires a best-interest finding in termination cases.

As the court recognized in *K.D.*, the termination of parental rights impacts not only the interests of the parent but also the fundamental liberty interests of the child. 471 S.W.3d at 167 (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003) ("Consideration of the private interest factor cannot be limited to only the parent's interest. The child bears a substantial interest in the proceedings as well.")). Yet, typically, the child is not a party to the parents' mediated settlement agreement. Nor is the child typically represented by counsel. Consequently, the child's interest in maintaining a parental relationship may not be adequately represented in the mediation. We could hardly conclude that the Legislature intended section 153.0071(e) and a mediated settlement agreement to preclude the trial court from protecting the liberty interests of the child by deciding whether the plaintiff has proved by clear and convincing evidence that termination would be in the child's best interest, as section 161.001(2) requires.

Another important consideration is the finality and irrevocability of a decree terminating parental rights. Unlike a termination decree under Chapter 161, a child-conservatorship decree under Chapter 153 may be modified:

> Suits for conservatorship, possession, and support are governed by Chapter [153] of the Family Code and those matters are determined by the "best interest" test. Section [153.002]. Those proceedings are

15

different and have different purposes from termination cases. Decrees under Chapter [153] may be modified or changed from time to time, but the parent still retains some rights in and control over a child. A termination decree, on the other hand, is complete, final, irrevocable. It divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. . . . The difference in the proceedings justifies the caution with which courts have characteristically considered termination cases.

*Wiley v. Spratlan*, 543 S.W.2d 349, 351–52 (Tex. 1976). Although it is clear that the Legislature intended, under section 153.0071(e), that the court be bound by the parties' mediated settlement agreement in child-conservatorship suits (where the decree may be modified if necessary), it is not clear that the Legislature intended this result for termination-of-parental-rights suits (where the decree is final and irrevocable). To the contrary, section 161.001(2) reflects a legislative intent that the court may terminate the parent-child relationship only if there is clear and convincing evidence that termination is in the child's best interest.

For these reasons, we conclude that section 153.0071(e) does not apply to suits for termination of the parent-child relationship under Chapter 161 of the Family Code and that a mediated settlement agreement therefore does not preclude a trial court from determining under section 161.001(2) whether the plaintiff has proved by clear and convincing evidence that termination would be in the child's best interest. Our interpretation of these statutes remains the same regardless of whether the Department of Family and Protective Services is a party to the parental-termination suit.[5]

---

[5] The *K.D.* court expressed concern about the possibility of government overreach by the Department of Family and Protective Services and thus stated that "[w]e do not decide and express no opinion on whether section 153.0071(e) would foreclose a trial court's best-interest determination in a

16

# IV. CONCLUSION

The relator has not established that the respondent trial judge clearly abused her discretion. Accordingly, we deny the relator's petition for writ of mandamus.


/s/    Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.

---

parental-rights termination case resolved by a mediated settlement agreement in which the Department [of Family and Protective Services] was not a party." 471 S.W.3d at 170–71, and 174 n.18. The concern raised by the court in *K.D.* is an issue of public policy, not statutory construction. Sections 153.0071(e) and 161.001 of the Family Code do not distinguish between suits brought by the Department and suits brought by private parties. We see no valid statutory basis for recognizing such a distinction.