**AFFIRM; and Opinion Filed February 17, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01055-CV

## IN THE INTEREST OF A.S., A CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 15-00707-W**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Fillmore, and Justice Brown
Opinion by Justice Brown

Father appeals an order appointing Mother as sole managing conservator of A.S. In three issues, Father generally contends the trial court abused its discretion by entering an order that varied from the terms of a mediated settlement agreement (MSA). For the following reasons, we affirm.

In July 2015, the Texas Department of Family and Protective Services (the Department) filed an original petition for the protection and conservatorship of A.S. and to terminate Mother and Father's parental rights. The trial court entered temporary orders appointing the Department temporary managing conservator of A.S. and ordering Mother and Father to complete a family services plan, which included parenting classes, a psychological evaluation, and a drug and alcohol assessment. At that time, Mother and Father were not in a relationship but, according to Father, they were trying to rectify that.

Mother completed her family services plan. Father did not. The Department, Mother, and Father subsequently entered into a mediated settlement agreement (MSA) in which Mother was appointed sole managing conservator of A.S. and Father was appointed possessory conservator. The parties agreed that Father could have supervised visitation as arranged and agreed to by Mother. Absent agreement, the MSA provided Father's visitation would occur from 1:00 p.m. to 4:00 p.m. at a specified McDonald's Restaurant or other agreed neutral location. It further required that Father's visitation be supervised by one of the child's grandmothers or another competent adult designated by Mother.

The parties also agreed that Father would be enjoined from being within 500 feet of Mother's residence or her place of employment or the child's daycare or school. Finally, the MSA provided that, upon "prove-up," the Department would request to be dismissed as a party to the suit. The MSA was signed by the Department, Mother, Father, each of their attorneys and the child's attorney ad litem.

The very first supervised visitation pursuant to the terms of the MSA was volatile. Mother was present for portions of the visitation; during the portion of the visitation Mother did not attend, her new husband, his mother and a friend were present. It ended with a call to police when Father tried to leave the restaurant with the child.

The child's attorney ad litem subsequently filed a report recommending Father's visitation be supervised at Hannah's House or a similar protective facility. At the prove-up hearing, Valerie Williams, the Child Protective Services (CPS) supervisor assigned to A.S.'s case, testified that after the Department entered into the MSA, allegations were made that Father took a knife with him to his first visitation. She said the Department would not have agreed to the terms of the MSA if it knew such problems would arise and that it was now concerned that the visitation provisions in the MSA could place A.S in danger.

Mother testified that Father was violent and she feared for her safety under the current terms of the MSA. Mother testified at the first visitation, Father acted violently, made threats, and tried to leave with A.S. Mother testified that, later that day, she heard appellant in her backyard and he then posted a comment on Facebook that he saw his cat in her window.

Mother's husband, Phillip Fuentes, also testified at the hearing. Fuentes testified he was present during Father's visitation and that he saw a knife in Father's pocket. Fuentes also testified that Father attempted to leave with A.S. during the visitation, but Fuentes prevented him from doing so.

Following a hearing, the trial court entered an order in accordance with the terms of the MSA except that it ordered Father's supervised visitation take place at the Family Place or Hannah's House, rather than the McDonald's or other agreed neutral location. The trial court also made an affirmative family violence finding.

In his first issue, Father contends the trial court had no authority to vary the terms of the MSA. He relies on section 153.0071(e) of the Texas Family Code. Section 153.0071(e) provides that, if an MSA meets certain statutory requirements, a party is entitled to judgment on the MSA. TEX. FAM. CODE ANN. § 153.0071(d) (West. 2014); *In re Lee*, 411 S.W.3d 445, 447 (Tex. 2013). In *In re Lee*, the Supreme Court held that when an MSA meets those requirements, a trial court has no authority to refuse to enter judgment based on a finding that the MSA was not in the best interests of the child. *In re Lee*, 411 S.W.3d 445, 447 (Tex. 2013). In doing so, the Supreme Court recognized that section 153.0071 represented a deviation from the general mandate of the family code that "[t]he best interests of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id*. at 454 (*citing* TEX. FAM. CODE ANN. § 153.002 (West 2014)). The Court nevertheless explained that, in enacting the statute, the Legislature merely recognized that

parents themselves are able to determine "what is best for their children within the context of [their] collaborative effort to reach and properly execute an MSA."[1] *In re Lee*, 411 S.W.3d at 454.

The Court also noted that the statute contained an exception in cases involving family violence. *See* TEX. FAM. CODE ANN. § 153.0071(e-1). Specifically, Section 153.0071(e-1) provides that a trial court may decline to enter a judgment on a compliant MSA if: (1) a party to the agreement was a victim of family violence and that circumstance impaired the party's ability to make decisions; and (2) the agreement is not in the child's best interest. TEX. FAM. CODE ANN. § 153.0071(e-1).

The question presented here is whether the exception authorized the trial court to modify a provision of the MSA that was not in A.S.'s best interests. According to Father, it did not because there was no evidence that family violence impaired Mother's ability to make decisions "at the mediation." For example, he asserts there was no evidence that Mother was "in fear of any physical harm, bodily injury or assault by [Father] that impaired [her] ability to make decisions prior to entering into the MSA." He further contends family violence could not have impaired Mother's ability to make decisions because the parties were aware that family violence was a "concern" and the MSA contained provisions to account for that concern.

Father's arguments focus on issues related to contract formation and whether Mother had the ability to knowingly and voluntarily enter into the MSA. Father misunderstands the nature of the exception and its purpose. The exception operates to vest the trial court with discretion to reject the terms of an MSA that is not in the best interests of the child when family violence is a

---

[1] Here, A.S. was removed from her parents' custody because they were not acting in her best interests. The MSA between the Department, Father, and Mother that followed bears little resemblance to the types of settlements the Supreme Court explained section 153.0071(e) is intended to encourage by limiting involvement of the courts. In fact, the Texarkana and Houston courts of appeals have held that section 153.0071(e) does not apply to termination cases, at least when the trial court orders termination. *See in re K.D.*, 471 S.W.3d 147, 169 (Tex. App.—Texarkana 2015, no pet.); *see also in re Morris*, 498 S.W.3d 624, 629-30 (Tex. App.—Houston [14 Dist.] 2016, no pet.). In this case, the Department does not dispute that section 153.0071 applies to this case. For purposes of this opinion only, we will assume that it does.

–4–

circumstance that impaired the party's "ability to make decisions." *See* TEX. FAM. CODE ANN. § 153.0071. Contrary to Father's suggestion, the plain language of the statute does not require the trial court to find family violence *caused* the victim to enter into the MSA. *See id.* In fact, the purpose of the exception is not to protect the victim of family violence, but the child by providing a check on a statute that otherwise prohibits the court from considering the child's best interests.

We conclude the fact that Mother knew family violence was a concern and (with the Department) negotiated terms that "contemplated" family violence does not establish family violence did not affect Mother's ability to make decisions in the best interests of A.S. Indeed, the MSA itself indicates Mother was not fully trusted to act in A.S.'s best interests. Specifically, it provided that Mother had the right to determine A.S.'s primary residence but that it "shall not be with [Father] absent further court order." Furthermore, it is undisputed that the supervised visitation provision the parties agreed to resulted in a volatile environment for A.S. At the hearing, Father blamed that volatility on Mother's decision to allow her designee to supervise the visitation. The trial court could have determined Mother's decision allowing her to designate who would supervise Father's visitation was not in A.S.'s best interests, but that she made it because she feared Father.

We conclude the record supports the trial court's implied finding that family violence was a circumstance that impaired Mother's ability to make decisions that were in the best interests of A.S. We resolve the first issue against appellant.

In his second issue, Father asserts "the trial court erred in making an affirmative finding of family violence against [him] because the final Order was not in strict compliance with the MSA and [he] was not afforded his Due Process right to be present and offer first hand testimony at the final hearing."

The appellate rules require a brief to contain a clear and concise argument for the contentions made with appropriate citations to the authorities and the record. See TEX. R. APP. P. 38.1(i). We have no duty or even right to perform an independent review of the record and applicable law to determine whether there was error. *See Bolling v. Farmers Branch Indep. Sch. Dist*., 315 S.W.3d 893, 896 (Tex. App.–Dallas 2010, no pet.).

In this issue, Father generally complains the trial court erred in making a finding of family violence because the parties did not agree such a finding would be made. However, as Father recognizes in his first issue, the trial court made that finding to support its decision to deviate from the visitation provision in the MSA. Father has not shown the finding had any other effect. We conclude Father has not adequately briefed any other complaint he might have with respect to the finding.

Father also generally complains the trial court made the finding following a hearing at which he was not present and thus had no opportunity to offer testimony controverting Mother's allegations. However, Father cites us to nothing in the record to show he was not present at the hearing. Indeed, the court reporter lists Father as one of the persons who was present. Father's complaint is not supported by the record. *See id.* ("If record references are not made . . ., the brief fails."). We resolve appellant's second issue against him.

In his third issue, Father contends the trial court erred in entering a protective order against him. At the prove up hearing, the trial court stated it was entering a protective order against Father. However, the trial court's judgment does contain any such order. Thus, Father's complaint again is not supported by the record. *See id*. We resolve the third issue against Father.

We affirm the trial court's order.

/Ada Brown/
ADA BROWN
JUSTICE

161055F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF A.S., A CHILD

No. 05-16-01055-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 15-00707-W.
Opinion delivered by Justice Brown. Chief Justice Wright and Justice Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of February, 2017.