

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00220-CV

IN THE INTEREST OF G.V., III AND
G.V., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-102780-16

----------

## OPINION

----------

This case of first impression calls on us to decide whether we should apply Chapter 153 ("Conservatorship, Possession, & Access") or Chapter 161 ("Termination of the Parent–Child Relationship") of the family code to a mediated settlement agreement, where

- the Department of Family and Protective Services initiated a suit to appoint a managing conservator and to terminate Father's and Mother's parental rights if reunification could not be achieved;

- while the termination proceeding was pending, Father and Mother entered into a mediated settlement agreement ("MSA") that changed the managing conservatorship but did not terminate their rights;

- the MSA recited that the agreement was "in the best interest" of the children and met the statutory requirements of section 153.0071 to be binding and enforceable;

- the Department then dropped its request to terminate Father's and Mother's parental rights and moved to modify managing conservatorship in accordance with the MSA; and

- after Father and Mother unsuccessfully objected and asked to back out of the MSA, the trial court entered a final order enforcing it under section 153.0071 and without requiring the Department to put on any best-interest proof.

Because we are unpersuaded that the mere possibility of termination at the time an MSA is entered into suffices to make section 153.0071 inapplicable—that is, because we disagree that the parents ought to have been able to revoke an otherwise-binding MSA that modified managing conservatorship simply because the Department initially and conditionally pleaded for termination—we affirm.

The MSA here reflected Father's and Mother's agreement that (1) their two young children would be placed with relatives who would be made the managing conservators, (2) the parents would have limited supervised visitation twice a month, (3) they would pay a combined $2,000 per month in child support, (4) they would not file a motion to modify for 48 months, but (5) they could move to modify in the event of an emergency. The MSA did not actually terminate Father's or Mother's parental rights, nor did either of them voluntarily relinquish their parental rights under the agreement, by a section 161.103 affidavit or

otherwise. Father and Mother then sought to revoke their consent to the MSA after the Department moved the trial court to enter judgment. Over the parents' objections, the trial court rendered judgment on the mediated settlement agreement under section 153.0071 of the family code. Tex. Fam. Code Ann. § 153.0071 (West 2014). Father and Mother appealed.

In three issues, Father and Mother assert that (1) the trial court erred by relying on section 153.0071(e), (2) the trial court erred by adopting the MSA's moratorium on any motions to modify for 48 months, and (3) the trial court erred by adopting the MSA's "emergency" prerequisite before any motion to modify could be filed in the interim. We affirm.

**Background**

On January 27, 2016, the Department of Family and Protective Services filed its "Original Petition for Protection of a Child, For Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship" against Father and Mother. The children involved were their two-year-old son, Andrew, and their three-month-old daughter, Betty.[1]

According to the supporting affidavits, three-month-old Betty had suffered non-accidental trauma. The perpetrator was unknown, and the record contains multiple references (one as late as April 10, 2017) both to an ongoing criminal

---

[1]We use aliases to refer to various individuals associated with this appeal. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2017); Tex. R. App. P. 9.8(b)(2).

3

investigation and to the fact that "a perpetrator has not been identified." Betty had numerous fractures in various stages of healing, including rib fractures, a clavicular fracture, a femur fracture, and distal femur corner fractures. Andrew had no injuries consistent with abuse or neglect. Betty attended a daycare, and it was the daycare that first expressed concerns on January 25, 2016. Father and Mother took Betty to a hospital that same evening. The Department's petition came two days later.

The petition sought to terminate Father's and Mother's parental rights to their two children under family code Chapter 161 ("Termination of the Parent-Child Relationship") of Subtitle B ("Suits Affecting the Parent-Child Relationship") of Title 5 ("The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship"). *See* Tex. Fam. Code Ann. §§ 161.001–.211 (West 2014 & Supp. 2017).[2] The Department's petition raised termination as a possibility if reunification could not be achieved.

The petition also encompassed conservatorship and child-support issues under Chapter 153 ("Conservatorship, Possession, and Access") and Chapter 154 ("Child Support"), respectively, which—like Chapter 161—are also under

---

[2]Effective September 1, 2015, section 161.001(1) and (2) became sections 161.001(b)(1) and (b)(2). Act of Mar. 26, 2015, 84th Leg., R.S., ch. 1, § 1.078, sec. 161.001(b), 2015 Tex. Sess. Law Serv. 1, 18 (West) (codified as an amendment to Tex. Fam. Code Ann. § 161.001). When we cite or quote cases decided under the previous section 161.001(1) or 161.001(2) designations, we do so knowing that the current provisions are found in sections 161.001(b)(1) and 161.001(b)(2).

Subtitle B of Title 5 of the family code. *See id.* §§ 153.001–.709, 154.001–.309 (West 2014 & Supp. 2017).

On the same date that the Department filed its petition, the trial court entered ex parte emergency orders appointing the Department as Betty's and Andrew's sole managing conservator; placing the children with the Smiths, who were family friends; and setting a date for a full adversary hearing in accordance with section 262.201 of the family code. *See id.* § 262.201 (West Supp. 2017).

At the February 5, 2016 full adversary hearing, the trial court signed an agreed temporary order to the same effect. As temporary managing conservator, the Department was specifically given all the rights and duties as set forth in section 153.371 of the family code. *See id.* § 153.371.

Father and Mother filed separate answers.

On March 2, 2016, the Smiths were appointed Betty's and Andrew's temporary possessory conservators, and the trial court ordered that both Father and Mother have only supervised visitation.[3]

On June 28, 2016, the Department filed a motion to remove the Smiths as temporary possessory conservators and, in their place, sought to appoint the Joneses as the children's temporary possessory conservators. Mr. Jones is Father's paternal great uncle.

---

[3]As part of the Department's motion to modify possessory conservatorship on which this order was based, it submitted an affidavit stating that "[t]here is an ongoing criminal case pending to see who caused the injured [*sic*] to this child."

5

The following week, Jane Doe, a person who had regular contact with the children before their removal, filed a petition in intervention. She asserted that appointing either parent as sole managing conservator or both parents as joint managing conservators would significantly impair the children's physical health or emotional development. She sought to be appointed the children's possessory conservator.

As the Department requested, in early July 2016 the trial court removed the Smiths and appointed the Joneses as the children's temporary possessory conservators.

On August 31, 2016, the trial court ordered Father to pay $1,200 per month in child support and ordered Mother to pay $800 per month in child support.

On October 5, 2016, the Department, the Joneses, Father, Mother, and Jane Doe filed a "Binding [Mediated] Settlement Agreement." *See id.* § 153.0071(e). There is no allegation that the parties failed to meet the prerequisites to a binding agreement under section 153.0071(d). *See id.* § 153.0071(d).

As the case approached its one-year anniversary, the trial court signed an order in December 2016 retaining the suit on the court's docket and resetting the case's dismissal date to July 26, 2017.[4] *See id.* § 263.401 (West Supp. 2017).

---

[4]The prosecutor explained the need for the delay at the June 6, 2017 hearing: "The reason why we extended the case was so that the [Joneses],

6

On March 28, 2017, the Department filed a "Motion to Modify Managing Conservatorship in a Suit Affecting the Parent-Child Relationship." The Department sought to have itself removed as managing conservator and to have the Joneses appointed as managing conservators. The Department additionally sought to have Father, Mother, and Jane Doe appointed as possessory conservators.

On April 12, 2017, Father and Mother replaced their original attorney and filed a joint objection to the MSA. The unique (and limited) grounds for setting aside a mediated settlement agreement are set out in section 153.0071(e-1) of the family code. *See id.* § 153.0071(e-1). Father and Mother did not, however, raise those grounds.

On June 1, 2017, relying specifically on section 153.0071(e) for the proposition that the trial court must enter judgment in accordance with the MSA, the Department filed a motion to enter judgment. *See id.* § 153.0071(e).

Father and Mother responded to that motion four days later. Once again, they did not cite section 153.0071(e-1) as the basis for invalidating the MSA.

The next day, June 6, 2017, at the hearing on the Department's motion to modify managing conservatorship and motion to enter judgment, the Department requested that a judgment be entered based on section 153.0071(e) of the family

who had possession of [Andrew] and [Betty], would be licensed and be able to get foster connection benefits by being licensed for six months before we close the case."

7

code. When the trial court specifically asked if that meant the Department was not going to be putting on any testimony, the Department responded, "That's correct."

That same day, the trial court signed its "Final Order in Suit Affecting the Parent-Child Relationship." Citing section 153.371, the trial court appointed the Joneses as the children's permanent managing conservators and consequently removed the Department as managing conservator. *See id.* § 153.371. Father, Mother, and Jane Doe were appointed possessory conservators, and the court then identified the conservators' statutory rights as set out in sections 153.073 and 153.074. *See id.* §§ 153.073–.074. The court incorporated the mediated settlement agreement by reference and attached it as Attachment A.[5] The MSA, as noted, included a 48-month moratorium on filing a motion to modify and required an "emergency" before any motion to modify could be filed within those four years.[6] The court ordered possession as set out in Attachment B,

---

[5]The order did contain an unexplained variance from the MSA: the October 3, 2016 MSA appears to recite—the copy in the record is not completely legible—that Father's and Mother's periods of possession were to be supervised by Family Court Services or the Smiths, the latter of whom did not participate in the mediation or sign the MSA. (The Smiths were the family friends initially designated as the children's temporary possessory conservators, a role into which the Joneses stepped in place of the Smiths with the court's July 6, 2016 order.) The final order incorporates the MSA "save and except any reference to" either of the Smiths. Father and Mother do not complain on appeal, and did not complain in the trial court, that the trial court's variance from the MSA somehow rendered it legally infirm or void.

[6]Although the MSA can be interpreted to mean that an emergency would be necessary even after 48 months had elapsed, at the June 6, 2017 hearing

8

under which Father and Mother got four hours of supervised visitation twice a month. Finally, the court ordered that Father and Mother pay child support as set out in Attachment C, which simply continued Father's $1,200 monthly payments and Mother's $800 monthly payments.

## Section 153.0071(e) applies in this case

In their first issue, Father and Mother assert that section 153.0071(e) of the family code does not apply to suits to terminate the parent–child relationship brought under family code Chapter 161, citing *In re Morris*, 498 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding), and *In re K.D.*, 471 S.W.3d 147 (Tex. App.—Texarkana 2015, no pet). They contend that because termination under Chapter 161 was foundational to this suit, the trial court erred by granting the motion to enter judgment on the MSA based on section 153.0071. Although the Department's suit did not result in a Chapter 161 termination, Father and Mother argue that because termination was still a possibility at the time they negotiated and agreed to the MSA, section 153.0071 does not apply.[7]

---

both sides treated that "emergency" provision as applying only during the first four years, with the parents being free to move to modify on any available basis thereafter.

[7]Despite having claimed duress in their written response to the Department's motion, at the motion-to-modify hearing Father and Mother, through counsel, explicitly disavowed that theory: "That threat hanging over their head at the time of mediation, which everybody here concedes it was, is what makes this—I'm not making any argument that my clients signed this under duress or for the duress reason they should get out." On appeal, they appear to

Section 153.0071 provides, in part:

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

> (2) is signed by each party to the agreement; and

> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

(e-1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds:

> (1) that:

>> (A) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; or

>> (B) the agreement would permit a person who is subject to registration under Chapter 62, Code of Criminal Procedure, on the basis of an offense committed by the person when the person was 17 years of age or older or who otherwise has a history or pattern of past or present physical or sexual abuse directed against any person to:

---

argue duress tangentially by suggesting that the mere threat of termination takes the MSA out of Chapter 153 and puts it into Chapter 161.

> > (i) reside in the same household as the child; or
>
> > (ii) otherwise have unsupervised access to the child; and
>
> (2) that the agreement is not in the child's best interest.

Tex. Fam. Code Ann. § 153.0071.

   A. *In re Lee*: The supreme court holds that, with a narrow statutory exception that Father and Mother do not rely on, section 153.0071 removes the trial court's discretion to deviate from the mediated settlement agreement.

In a case that did not involve termination or the threat of termination in any respect, the Texas Supreme Court has written that section 153.0071(e) unambiguously entitles a party to judgment on a mediated settlement agreement that meets the statutory requirements. *In re Lee*, 411 S.W.3d 445, 453 (Tex. 2013) (orig. proceeding). The only narrow exception is when section 153.0071(e-1)'s family-violence-related factors are satisfied. *Id.* The supreme court continued, "By its plain language, section 153.0071 authorizes a court to refuse to enter judgment on a statutorily compliant MSA on best interest grounds *only* when the court also finds the family violence elements are met." *Id.* Put differently, the court wrote that the statute did not authorize the trial court to substitute its judgment for that of the parties as reflected in the mediated settlement agreement absent the section 153.0071(e-1) elements. *Id.* The court viewed it as "absolutely clear" that the Legislature limited the trial court's consideration of best interest when entering a judgment on an MSA only to cases involving family violence. *Id.* "Allowing a court to decline to enter judgment on a

valid MSA on best interest grounds without family violence findings," the supreme court concluded, "would impermissibly render the family violence language in subsection (e–1) superfluous." *Id.*

Because Father's and Mother's case does not involve the section 153.0071(e-1) exception, under *Lee* the trial court was required to enter judgment on the mediated settlement agreement—and to do so essentially without any judicial oversight or review. *See id.* at 453–58; *see also Morris*, 498 S.W.3d at 629–30. Unless, of course, and as Father and Mother urge, section 153.0071 does not apply at all.

**B.** ***K.D.* and *Morris*:** Two intermediate courts hold that section 153.0071 does not limit the trial court's discretion when parental rights are actually terminated by agreement (and, according to Father and Mother, even when parental rights are not terminated but termination is threatened).

Faced with a mediated settlement agreement under which a mother signed away her parental rights, the Texarkana Court of Appeals balked at the idea that, in the context of a termination proceeding, the parties could effectively preclude a trial court from exercising any oversight or review. "Of course," it nevertheless wrote, "we do not hold that a settlement agreement obtained through mediation under Section 153.0071 accomplishes nothing in a parental-rights termination case brought by the Department," pointing out that the mediation "resulted in the execution of a valid and enforceable affidavit of relinquishment and mediated settlement agreement." *K.D.*, 471 S.W.3d at 168. That is, the relinquishment affidavit eliminated the Department's burden of proving the first prong under

12

section 161.001(b)(1) and precluded the mother from backing out of an agreement in which she agreed that termination was in her child's best interest, because the agreement was enforceable against her. *Id.*

But the critical question was whether the mother's agreement that termination was in her child's best interest bound the *trial court. Id.* "In other words," asked the Texarkana court, "must the Department still prove by clear and convincing evidence that termination of [the mother's] rights is in [her child]'s best interest [under section 161.001(b)(2)] even though [the mother] agreed that it was," or could "the [affidavit of relinquishment] and the MSA eliminate that [section 161.001(b)(2) best-interest] element of proof as well[?]" *Id.*

The answer in *K.D.* was that the Department still had to prove the best-interest element regardless of a relinquishment affidavit and an MSA. "After comparing the mediation process in a parental-rights termination case brought by the Department against the mediation process involving private parties," and then "evaluating the results of that comparison in light of constitutional due process considerations," the court concluded that "due process requires the [Department] to still prove by clear and convincing evidence that termination is in the child's best interest." *Id.* at 168–69. The court noted that "a mediated settlement agreement and an affidavit of relinquishment in a parental-rights termination case may be binding between the parties," but that fact "does not eliminate the Department's burden of proving by clear and convincing evidence under [section

13

161.001(b)(2)] that termination is in the child's best interest or the trial court's power to deny termination in the absence of such proof." *Id.* at 169.

The Houston Fourteenth Court of Appeals effectively adopted *K.D.*'s analysis in its *Morris* opinion. 498 S.W.3d at 631–34.

## C. Discussion

We agree with Father and Mother that the Department filed this suit to terminate their parental rights under Chapter 161—but it was also more than a termination suit. The Department sought conservatorship for itself, and, if Father's and Mother's parental rights were not terminated, it sought to have the conservatorship placed in someone other than the parents. The suit thus encompassed both Chapter 161 and Chapter 153 and was ultimately resolved under Chapter 153.

The cases on which Father and Mother rely—*K.D.* and *Morris*—were ones that entailed mediated settlement agreements resulting in the explicit termination of parental rights. *Morris*, 498 S.W.3d at 626; *K.D.*, 471 S.W.3d at 153. It was the fact of those terminations that unquestionably put *K.D.* and *Morris* within Chapter 161, unlike here, where Father's and Mother's parental rights were not terminated.

Although their rights were not in fact terminated, Father and Mother argue that section 153.0071 nevertheless does not apply because the Department pleaded for termination and because termination was still on the table when the mediation occurred. We disagree. The precise question asked in *K.D.* was, "Does

14

Section 153.0071(e) Foreclose a Best-Interest Review Under Section 161.001(2)?" *K.D.*, 471 S.W.3d at 165. The answer was no, that it does not. *Id.* at 169.[8] Similarly, in *Morris*, the court held that section 153.0071(e) does not "preclude a trial court from determining under section 161.001(2) whether the plaintiff has proved by clear and convincing evidence that termination would be in the child's best interest."[9] *Morris*, 498 S.W.3d at 634.

---

[8]The *K.D.* court wrote:

> [A] mediated settlement agreement and an affidavit of relinquishment in a parental-rights termination case may be binding between the parties, but it does not eliminate the Department's burden of proving by clear and convincing evidence under Section 161.001(2) that termination is in the child's best interest or the trial court's power to deny termination in the absence of such proof.

*Id.* Later in the opinion, the *K.D.* court wrote more broadly: "In the absence of any clear Legislative intent to the contrary, we find that Section 153.0071(e) does not foreclose judicial review of the best-interest element of proof in a parental-rights termination case brought by the Department." *Id.* at 174. To us, the more specific language controls, and the broader language of the sentence just quoted does not expand the holding to mean that section 153.0071 does not apply whenever the Department simply *pleads* for termination.

[9]The full quote suggests, at first blush, that *Morris* is written more broadly but in context is not:

> [W]e conclude that section 153.0071(e) does not apply to suits for termination of the parent-child relationship under Chapter 161 of the Family Code and that a mediated settlement agreement [*effectuating a termination*] therefore does not preclude a trial court from determining under section 161.001(2) whether the plaintiff has proved by clear and convincing evidence that termination would be in the child's best interest.

*Id.*

15

Both *K.D.* and *Morris*—which, we reiterate, involved settlements in which a parent actually agreed to termination—focused specifically on the MSA's effect on the section 161.001(b)(2) best-interest finding that a court must make. Because Father's and Mother's parental rights were not terminated, there is no section 161.001(b)(2) finding to review, nor did the trial court need to make such a finding.

To the extent *K.D.* suggests that its analysis applies even to termination suits that do not actually result in termination, any such suggestion would be dicta. Father's and Mother's reliance on *Morris* is distinguishable for the same reason: *Morris* involved a suit to terminate parental rights that ended in a mediated settlement agreement terminating the mother's rights. 498 S.W.3d at 627. Any language in *Morris* suggesting that its analysis applies even to termination suits that do not result in termination is dicta as well. Contextually, both *K.D.* and *Morris* appeared to have used the broader language precisely because their facts involved termination suits that resulted in termination, meaning that section 161.001(b)(2) was necessarily implicated. In contrast, nothing in the settlement agreement here implicated section 161.001, because no parental rights were terminated.

At oral argument, Father and Mother argued that just as a criminal defendant may back out of plea bargain and go to trial, so too should they have the right to back out of their mediated settlement agreement and go to trial. But a criminal defendant does not face a non-negotiable statutory dismissal deadline, as the Department here did—July 26, 2017. *See* Tex. Fam. Code Ann.

16

§ 263.401 (providing that a Department case seeking termination or to have the Department appointed conservator must be dismissed, if not tried, no later than 180 days after the suit's one-year anniversary).[10] If parents could unilaterally revoke a mediated settlement agreement, they could play havoc with that dismissal deadline. Additionally, and most importantly, children need permanency and stability. *See In re C.T.*, 491 S.W.3d 323, 328–29 (Tex. 2016) (orig. proceeding). An irrevocable MSA lends itself to those goals; a revocable MSA potentially undermines them. Ultimately, of course, this is an issue for the legislature. For Father's and Mother's and for our purposes, the legislature has spoken. This case was resolved under Chapter 153 and did not terminate the parents' rights; therefore, section 153.0071 applies.

We hold that the trial court did not err by applying section 153.0071(e). We overrule Father's and Mother's first issue.

### Father's and Mother's remaining issues are not ripe

Father's and Mother's remaining two issues attacking (1) the 48-month limitation before they can move to modify and (2) the "emergency" exception are

___

[10]Underscoring the time-sensitive nature of these kinds of cases, we are in turn directed to do everything in our power to hand down a decision within 180 days from the date a notice of appeal is filed. Tex. R. Jud. Admin. 6.2(a). The dissent correctly notes that the rule is not absolute, but we have not exceeded 180 days a single time since 2015. Without elaboration, we also note our disagreement with some of what is implied about timing issues concerning the majority opinion. Finally, although the dissent does not mention or suggest it, we invite the parties to move for rehearing so that everyone can at that point receive what we know will be a thorough and deliberate dissent in this important case.

not ripe. *See Waco I.S.D. v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000); *Patterson v. Planned Parenthood of Houston and Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998).

Ripeness and standing are subject-matter-jurisdiction components and cannot be waived. *Waco I.S.D.*, 22 S.W.3d at 851. Under the ripeness doctrine, courts consider whether, at the time the plaintiff sues, the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* at 851–52 (quoting *Patterson*, 971 S.W.2d at 442). The ripeness analysis thus focuses on whether the case involves "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Id.* at 852 (quoting *Patterson*, 971 S.W.2d at 442). By focusing on whether the plaintiff has a concrete injury, the ripeness doctrine prevents premature adjudications and serves the constitutional prohibition against advisory opinions. *Id.* A case is not ripe if determining whether the plaintiff has a concrete injury depends on (1) contingent or hypothetical facts or (2) events that have not yet come to pass. *Id.*

In this case, neither Father nor Mother has filed a suit to modify conservatorship. No trial court has ruled on Father's and Mother's contentions that the 48-month provision and the "emergency" provision are invalid. Any opinion we might give on the matter would be advisory in anticipation of such a future motion to modify conservatorship. We may not give advisory opinions. *See Patterson*, 971 S.W.2d at 443.

We overrule Father and Mother's second and third issues.

## Conclusion

Having overruled all of Father and Mother's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  WALKER, KERR, and PITTMAN, JJ.

WALKER, J., filed a dissenting opinion.

DELIVERED:  December 18, 2017