

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-17-00220-CV

IN THE INTEREST OF G.V., III
AND G.V., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-102780-16

----------

## DISSENTING OPINION FROM ORDER DENYING
## MOTHER AND FATHER'S MOTION FOR REHEARING EN BANC

----------

### I. INTRODUCTION

I would grant Mother and Father's motion for rehearing en banc. I would

hold that the binding mediated settlement agreement (MSA) reached in this case

pursuant to the provisions of family code section 153.0071 is not enforceable in

this termination suit brought by the Department of Family and Protective Services

under chapter 161 of the family code because Mother and Father revoked their consent to the agreement before the trial court entered judgment on it. *See* Tex. Fam. Code Ann. § 153.0071 (West Supp. 2017), §§ 161.001–.211 (West 2014 & Supp. 2017). Because the majority opinion[1] holds otherwise and because a majority of this court has voted to deny Mother and Father's motion for rehearing en banc, I respectfully dissent.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Department initiated the present lawsuit on January 27, 2016, by filing an "Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent Child Relationship." The Department pleaded that it had taken possession of three-month-old Betty[2] without a court order in accordance with section 262.104 of the family code; requested that the trial court issue emergency orders concerning two-year-old Andrew; requested that the trial court immediately, without notice or an adversary hearing, appoint the Department as temporary sole managing conservator of Betty and Andrew; and sought termination of the parental rights of Mother and Father to Betty and Andrew if family reunification could not be achieved. *See id.* § 262.104 (West

---

[1] *See In re G.V.*, No. 02-17-00220-CV, 2017 WL 6422132, at *8 (Tex. App.—Fort Worth Dec. 18, 2017, no pet. h.) (mem. op.)

[2] For ease of reading, I utilize the same aliases adopted by the majority opinion. *See G.V.*, 2017 WL 6422132, at *1–8; *see also* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2017); Tex. R. App. P. 9.8(b)(2).

Supp. 2017) (setting forth procedures for Department to take possession of a child in an emergency without a court order).

The affidavit of removal supporting the Department's petition explained that Mother, who is employed by a public school, had received a call from Betty and Andrew's day care stating that Betty was not acting right; Betty had attended that day care since she was six weeks old. Mother went to the day care, fed Betty a bottle, and soothed her. Mother returned to work but later that day received another call from the day care saying that Betty was not acting right. Mother picked up Betty from the day care and took her to a hospital emergency room based on the concerns expressed by the day care. At the emergency room, doctors determined that Betty had suffered fractures to almost all of her ribs; that the fractures were in various stages of healing; that Betty had fingerprint-shaped bruises on her back, buttocks, and right temple; that her clavicle was fractured and a knot was visible there; and that her femur had been previously fractured. Doctors ruled Betty's injuries as child abuse and called the Department.

Father, who was a licensed vocational nurse employed by John Peter Smith Hospital, and Mother both denied causing Betty's injuries and denied that Betty had the bruises or fracture to her clavicle when she was dropped off at day care. Mother and Father have no criminal convictions, have no prior CPS referrals, and have been married for thirteen years.

3

Doctors subsequently examined Andrew and determined that he had not sustained any prior injuries. Throughout the case, the Department consistently pleaded that the perpetrator of Betty's injuries was unknown and that a criminal investigation remained open.

The Department created a service plan for Mother and Father, and Mother and Father began working their plans.

The Department, Mother, Father, the Joneses,[3] and an intervenor named Jane Doe mediated their claims and signed a "Binding Medi[]ated Settlement Agreement."[4] In the MSA, the parties did not agree to termination of Mother's and Father's parental rights but did agree to appoint the Joneses as the children's managing conservators; to appoint Mother, Father, and Jane Doe as possessory conservators; to permit Mother and Father to have four hours of visitation with the children every second and fourth Saturday from 9:00 a.m. to noon; and to have Mother and Father's visits supervised by the Smiths. The MSA also called for Mother and Father to pay child support to the Joneses. The MSA gave Jane Doe—on whom the record does not reflect that the Department conducted any type of home study or fitness investigation—possession of the children from 6:00 p.m. Friday to 6:00 p.m. Sunday every six weeks, for one week in the summer, and from December 27 at noon until December 29 at noon.

---

[3]The Joneses are relatives of Father.

[4]A copy of this MSA with names redacted is attached to this opinion.

4

The MSA stated that there would be "no modification until after 48 months" and separately stated that no modification is to be filed "unless emergency." The handwritten MSA was purportedly executed pursuant to section 153.0071 of the family code. After signing the MSA, Mother and Father filed a written "Objection to Binding Mediated Settlement Agreement" in which they revoked their consent to the MSA.[5]

The Department moved to remain managing conservator of Betty and Andrew and to extend the 180-day disposition deadline for its termination suit because the Joneses needed additional time "to qualify for permanency care assistance."[6] The trial court granted the extension.

About five months later, the Department filed a motion for judgment on the MSA. Mother and Father filed a response to the Department's motion for

---

[5]Mother and Father's written objection asserted that the MSA was not enforceable and should be set aside "for the following reasons:"

> (1). The MSA is not in the best interest of the children made subject of this suit, and moreover, *In Re: Stephanie Lee,* 411 S.W.3d 445 (Tex. 2013), and *Tex. Fam. Code Ann.* § 153.0071(d), are not controlling in this case; (2). The MSA is illegal because the ability to seek a modification of the Permanent Managing Conservator is a statutory right and is not waivable; (3). The MSA is void for vagueness as the term "Emergency" as used therein is vague and not defined; (4). The MSA was signed by Respondents while under duress; and (5). The MSA is contrary to public policy.

[6]In addition to this statement in its motion for extension, the Department subsequently explained on the record, "The reason why we extended the case was so that the [Joneses] who had possession of [Andrew] and [Betty] would be licensed and be able to get foster connection benefits by being licensed for six months before we close the case."

5

judgment, alleging that the MSA was not enforceable because Mother and Father had withdrawn their consent to the MSA, because MSAs are not enforceable in termination suits, because the 48-month-no-modification provision in the MSA is contrary to Mother and Father's statutory rights and renders the MSA illegal and contrary to public policy, and because Mother and Father had signed the MSA under duress—the Department's pending threat of termination of their parental rights. Affidavits by Mother and Father were attached to their response; the affidavits stated that Mother and Father did not believe the MSA was in the best interest of Andrew or Betty; that at the mediation, Mother and Father were threatened with termination of their parental rights if they did not sign the MSA; and that Mother and Father "would never have entered into the MSA but for the threat of termination."

The trial court conducted a hearing on the Department's motion for judgment on the MSA. At the hearing, Mother and Father again argued that the MSA was not enforceable, specifically asserting the same grounds they had raised first in their written objection to the MSA and again in their response to the Department's motion for judgment on the MSA. The Department put on no evidence at the hearing, moving for judgment based solely on the MSA's enforceability under family code section 153.0071. The trial court signed a judgment enforcing all but a few provisions of the MSA.

Mother and Father then perfected this appeal.

6

### III. SECTION 153.0071 MSAs ARE NOT BINDING—THAT IS, ARE REVOCABLE PRIOR TO JUDGMENT—IN CHAPTER 161 TERMINATION SUITS

### A. The Law

### 1. Concerning Chapter 153.0071 MSAs

The legislature has announced that the public policy of Texas with respect to conservatorship, possession, and access to children under chapter 153 of the family code is to (1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; (2) provide a safe, stable, and nonviolent environment for the child; and (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. *See id.* § 153.001(a) (West 2014). In furtherance of chapter 153's stated policies of protecting children and encouraging parents to share in the rights and duties of child-rearing, even after they have divorced, the legislature enacted section 153.0071, providing for binding MSAs. *See id.* § 153.0071; *Lee*, 411 S.W.3d at 454–55 (explaining the legislature's goal of protecting children is furthered by section 153.0071, which incentivizes parents to work collaboratively for their children's welfare). Under section 153.0071, settlement agreements involving suits affecting the parent-child relationship (SAPCRs) that comply with section 153.0071(d)'s provisions— which require that the MSA contain a specific type of prominent notice that the MSA is nonrevocable and that it be signed by the parties and the parties' attorneys who attend the mediation—are immediately enforceable; are not

7

subject to repudiation by a party; and, with certain limited exceptions, are binding on the trial court without approval or determination of whether the agreement's terms are just and right or in the child's best interest. *See* Tex. Fam. Code Ann. § 153.0071(d); *Lee*, 411 S.W.3d at 454 (explaining that in enacting section 153.0071, the legislature merely recognized that parents themselves are able to determine "what is best for their children within the context of [their] collaborative effort to reach and properly execute an MSA"); *Scruggs v. Linn*, 443 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding trial court generally does not have discretion to decline to render judgment on or deviate from MSA); *In re M.A.H.*, 365 S.W.3d 814, 819–20 (Tex. App.—Dallas 2012, no pet.) (distinguishing MSAs satisfying elements of section 153.0071(d), which are not subject to revocation of consent, from unmediated settlement agreements, which are); *see also In re S.A.D.S.*, 413 S.W.3d 434, 438–39 (Tex. App.—Fort Worth 2010, no pet.) (modifying trial court's order and affirming order as modified because, pursuant to family code section 153.0071(e), "the trial court had no authority to enter an order that varied from the terms of the [MSA]").

### 2. Concerning Suits for Termination of Parental Rights

A parent's rights to his or her children involve a right more precious than any mere property right. *See Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) (recognizing that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents concerning the care, custody, and control of their children); *Zablocki v. Redhail*, 434 U.S. 374, 384, 98

8

S. Ct. 673, 680 (1978) (recognizing that the right to bring up children is a central part of the liberty protected by the Due Process Clause); *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (same). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *E.R.*, 385 S.W.3d at 554 (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).

Chapters 262[7] and 263[8] of the family code were enacted to provide this requisite due process and fundamental fairness in termination suits brought by the Department and to ensure speedy placement of a child in a permanent home when the Department has been named temporary or permanent managing conservator of a child. *See* Tex. Fam. Code Ann. §§ 262.001–.352, 263.001–.608; *In re K.D.*, 471 S.W.3d 147, 167–68 (Tex. App.—Texarkana 2015, no pet.) (explaining that chapter 262 of the family code was enacted to provide due process requisites in parental termination cases) (citing *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003), *cert. denied*, 541 U.S. 945 (2004)); *In re A.J.K.*, 116 S.W.3d 165, 171 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that

---

[7]Chapter 262 is titled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child" and governs suits in which the Department seeks termination of parental rights. *See* Tex. Fam. Code Ann. §§ 262.001–.352 (West 2014 & Supp. 2017).

[8]Chapter 263 is titled "Review of Placement of Children Under Care of Department of Family and Protective Services" and governs suits in which the Department is named temporary or permanent managing conservator of a child. *See* Tex. Fam. Code Ann. §§ 263.001–.608 (West 2014 & Supp. 2017).

"[t]he [*l*]egislature's intent to further this goal [of a permanent home for a child in Department custody] has been recognized as one of the express purposes behind the enactment of [c]hapter 263") (citing "Cynthia Bryant & Charles G. Childress, *Introductory Comment to Chapter 263*, SAMPSON & TINDALL'S TEXAS FAMILY CODE ANNOTATED at 950"). Due process and fundamental fairness in termination suits are further served by application of a higher standard of proof at trial—clear and convincing evidence. *See* Tex. Fam. Code Ann. §§ 161.001(b), 161.206(a); *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014).

## B. Analysis

Courts of appeals that have addressed the issue of whether family-code-section-153.0071 MSAs—custody contracts—are enforceable in chapter-161-termination-of-parental-rights suits have held that they are not, although in a context different than the revocability-of-consent-prior-to-entry-of-judgment context presented here. *See In re Morris*, 498 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding [mand. denied]) (holding that "section 153.0071(e) does not apply to suits for termination of the parent-child relationship under [c]hapter 161 of the [f]amily [c]ode"); *K.D.*, 471 S.W.3d at 169 (holding that "because [c]hapter 153 only involves suits for conservatorship, possession, and access to children, then only cases for conservatorship, possession, and access to children that are referred to mediation under [s]ection 153.0071(c) can produce [an MSA] that forecloses the trial court's best-interest review. Because termination cases are governed by [c]hapter 161, [s]ection 153.0071(e) would not

10

apply to such cases"); *see also generally Richardson v. Green*, 677 S.W.2d 497, 500 (Tex. 1984) (recognizing a "significant distinction between a custody suit and a termination action" because "'[t]ermination does not merely end the right of the parent to physical possession of the child, subject to modification; it is an action with constitutional dimensions, terminating forever the natural right which exists between parents and their children"); *Martin v. Black*, 909 S.W.2d 192, 195 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (explaining the contractual nature of an MSA).

The majority distinguishes *K.D.* and *Morris* on the ground that the MSA here, unlike the MSAs in *K.D.* and *Morris*, did not include an agreement to terminate parental rights. Because the MSA here—and the judgment on the MSA—addressed conservatorship issues, the majority holds that section 153.0071 and the Texas Supreme Court's holding in *Lee* construing section 153.0071 applies.[9] I cannot agree for the following reasons.

## 1. The Department's Suit Filed Against Mother and Father Is a Termination Suit

The Department obtained emergency removal of Betty and Andrew from Mother's and Father's custody without a court order. *See* Tex. Fam. Code Ann. § 262.102. When the Department filed suit against Mother and Father, it sought to be named temporary possessory conservator of Betty and Andrew and

---

[9]*See G.V.*, 2017 WL 6422132, at *5 (stating that "under *Lee*[,] the trial court was required to enter judgment on the mediated settlement agreement—and to do so essentially without any judicial oversight or review").

11

pleaded for termination of Mother's and Father's parental rights if family reunification was not possible. The Department's suit pleaded seven statutory grounds supporting the termination of Mother's and Father's parental rights and pleaded that termination of Mother's and Father's parental rights was in Betty's and Andrew's best interest. Consequently, this suit is a termination suit. *See id.* § 161.101 (providing that "[a] petition for the termination of the parent-child relationship is sufficient without the necessity of specifying the underlying facts if the petition alleges in the statutory language the ground for the termination and that termination is in the best interest of the child"); *see also In re N.R.T.*, 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.) (holding Department's "Petition to Modify Parent-Child Relationship" sufficient to support termination of parents' rights because petition alleged statutory grounds for termination and stated that termination was in the best interest of the children).

The fact that the MSA in this case did not include an agreement to terminate Mother's and Father's parental rights but instead includes only an agreement to restrict Mother's and Father's possessory rights to Betty and Andrew to four hours every other Saturday for four years does not transform the Department's suit into something other than a termination suit; it just means that the termination issue was resolved at mediation in Mother's and Father's favor. *Cf. A.J.K.*, 116 S.W.3d at 167–69 (holding section 263.405's accelerated appeal provision for termination suits applied even when the Department had abandoned its request for termination yet remained a party). Thus, I would hold

12

that this appeal stems from a termination suit and falls within the parameters of *K.D.*'s and *Morris*'s holdings that section 153.0071 binding MSAs are not binding in termination suits.

## 2. *Lee* Does Not Apply

*Lee* involved parents who had previously been appointed joint managing conservators of a child. 411 S.W.3d at 448. The father filed a motion to modify the prior order, and ultimately, the parents entered into a section 153.0071 MSA. *Id.* The mother filed a motion for judgment on the MSA, but the trial court refused to enter such a judgment after hearing evidence and concluding that the MSA was not in the child's best interest. The supreme court ruled that—absent evidence of the applicability of section 153.0071(e-1)'s narrow exception to enforcement—the trial court was required to enter judgment on the MSA. The supreme court explained:

> [S]ection 153.0071(e) reflects the [l]egislature's determination that it is appropriate for parents to determine what is best for their children within the context of the parents' collaborative effort to reach and properly execute an MSA. This makes sense not only because parents are in a position to know what is best for their children, but also because successful mediation of child-custody disputes, conducted within statutory parameters, furthers a child's best interest by putting a halt to potentially lengthy and destructive custody litigation.

*Id.* at 454. Thus, in *Lee*, the Texas Supreme Court outlined the legislature's logic in making section 153.0071 MSAs judicially enforceable by entry of a judgment: first, such MSAs allow parents acting in their children's best interest to collaboratively determine what is best for their children; and second, judicial

13

enforcement of such MSAs promotes quicker resolution of lengthy custody litigation, which is also in children's best interests. *Id.* at 454–55 (explaining that "section 153.0071(e) encourages *parents* to peaceably resolve their child-related disputes through mediation" and that the lower courts' failure to enforce the MSA in *Lee* "erod[es] parents' incentive to work collaboratively for their children's welfare") (emphasis added); *see also* Justice Debra H. Lehrmann, *Protecting our Children, The Legacy of* In re Lee, 80 Tex. B.J. 506, 506–07 (2017) (discussing *Lee*'s application to "custody battles" between two "adequate parents").

The logical reasons articulated by the supreme court as underlying its holding in *Lee*—mandating entry of judgment on a section 153.0071 MSA between parents—do not apply here. Unlike the MSA in *Lee*, Mother and Father's MSA does not resolve a custody suit between them as the parents of Betty and Andrew; it resolves a termination suit instituted by the Department against Mother and Father. Unlike the mother and father in *Lee*, Mother and Father here were not collaboratively involved in negotiating an MSA dividing between the two of them their possessory rights to their children in a manner promoting the best interest of their children; Mother's and Father's affidavits state that they entered into the MSA with the Department, the Joneses, and Jane Doe to avoid termination of their parental rights to Betty and Andrew.[10] And unlike the

_____

[10]Mother's and Father's affidavits filed in support of their response opposing the Department's motion for judgment on the MSA both state that "[d]uring the October 3, 2016, mediation, I was threatened with the termination of my parental rights if I did not sign the Mediated Settlement Agreement. . . . I

"custody battles" between "two adequate parents" addressed in *Lee* that are more quickly and peaceably resolved by an MSA entered as a judgment, the legislature has already set a statutory deadline for disposition of suits in which the Department seeks to terminate parental rights or to retain conservatorship of children. *See* Tex. Fam. Code Ann. § 263.401 (providing mandatory one-year dismissal deadline, subject to one 180-day extension, in SAPCR brought by the Department).

To me, it is clear that the Texas Supreme Court's holding in *Lee*—requiring the trial court to enforce the MSA entered into by Stephanie Lee's mother and father in Stephanie's father's suit to modify custody—does not control the present facts.

### 3. Family Code Chapters 161, 262, and 263 Do Not Contain a Binding MSA Provision, and Family Code Section 153.0071 Cannot be Construed to Apply to Those Chapters

Texas Family Code section 6.604(b) and section 153.0071(d) both contain the exact same binding MSA provision. *See* Tex. Fam. Code Ann. § 6.604(b) (West 2006), § 153.0071(d). Chapter 6 governs suits for dissolution of marriage while chapter 153 governs suits for conservatorship, possession, and access to children. Both sections provide, in identical language, that an MSA is binding on the parties if the agreement (1) provides, in a prominently displayed statement that it is in boldfaced type or capital letters or underlined, that the agreement is

would have never entered into the October 3, 2016 mediated settlement agreement but for the threat of termination."

15

not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. *See id.* §§ 6.604(b), 153.0071(d); *see also Milner v. Milner*, 361 S.W.3d 615, 618 n.2 (Tex. 2012) (discussing MSAs under chapter 6 of the family code); *In re C.C.E.*, 530 S.W.3d 314, 320 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (discussing MSAs under family code section 153.0071). A party to a statutorily-compliant MSA may not later revoke consent. *Lee*, 411 S.W.3d at 454; *C.C.E.*, 530 S.W.3d at 320 ("If a party attends mediation and enters into a mediated settlement agreement that complies with section 153.0071(d), the party may not later revoke consent."); *Scruggs*, 443 S.W.3d at 378; *S.A.D.S.*, 413 S.W.3d at 438–39.

Thus, the legislature knows how to statutorily make certain settlements binding and nonrevocable in suits for divorce (chapter 6) and custody suits (chapter 153), yet it did not do so in suits to terminate a parent's rights to his or her child (chapter 161) or in the family code chapters setting forth procedures applicable to suits by a governmental entity to protect the health, safety, and welfare of a child (chapter 262) or to suits in which the Department is named temporary or permanent managing conservator of a child (chapter 263). *See, e.g.*, *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 706 (Tex. 2015) (orig. proceeding) (refusing to construe section 160.007(b) of the occupations code concerning confidentiality of medical peer review records as placing an evidentiary burden on the plaintiff because "[t]he [l]egislature knows how to

16

provide this type of gatekeeping function, and subsection (b) is devoid of any language indicating intent to do so"). When the legislature expresses its intent regarding a subject in one setting (in family code chapters 6 and 153), but, as here, remains silent on that subject in another (in family code chapters 161, 262, and 263), we generally abide by the rule that such silence is intentional. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 n.4 (Tex. 2013).[11] I would hold that the legislature's express inclusion of a binding mediated settlement provision in both chapter 6 and chapter 153 of the family code—which govern divorces and child custody, respectively—when reviewed in the context of its failure to include such a provision in chapters 161, 262, and 263 was intentional and should be respected.

This construction is further supported by the fact that the binding, irrevocable nature of statutory MSAs under family code sections 6.604(b) and

---

[11]Citing as support, among other cases, *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 859 (Tex. 2002) ("[T]he [l]egislature knows how to clearly and unambiguously waive sovereign immunity from suit. . . . Here, neither section 5.351 nor 5.352 clearly and unambiguously waives the [Texas Natural Resource Conservation Commission]'s sovereign immunity from suit for breach-of-contract claims."); *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 358 (Tex. 2001) ("The [l]egislature could have added similar language to [s]ection 51.014(a)(3) and permitted appeals from orders refusing to decertify a class, but did not."); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 885 (Tex. 2000) ("Section 26.177(d) shows the [l]egislature knows how to provide a right of appeal to persons affected by a water quality plan or government action relating to a plan. Yet, the [l]egislature chose not to provide such a right to persons affected by section 26.179 plans or [Texas Natural Resource Conservation Commission] approval of plans.").

153.0071(d) is contrary to the common law. While, as set forth above, statutorily-compliant MSAs are generally binding when they are signed, at common law, a party may revoke his or her consent to a settlement agreement at any time before judgment is rendered on the agreement. *See S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995); *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983); *Samples Exterminators v. Samples*, 640 S.W.2d 873, 874–75 (Tex. 1982). At common law, a judgment rendered after one of the parties revokes his consent is void. *Samples*, 640 S.W.2d at 875. If a party revokes his consent, the settlement agreement may still be enforceable but only as a breach-of-contract action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.071 (West 2011); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995) (stating that "after proper notice and hearing," a party may enforce a settlement agreement complying with rule 11 as a binding contract "even though one side no longer consents to the settlement").

The legislature is certainly free to modify or abrogate common-law rules via statutes, but we are to construe a statute as doing so "only when that was what the [*l*]egislature clearly intended." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015) (quoting *Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007)). We are to decline to construe statutes to deprive citizens of common-law rights unless the legislature clearly expressed that intent. *Id.* (citing *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969)). There is nothing in chapter 161 or chapter 262 indicating the

18

legislature intended to statutorily deprive a parent—sued by the Department for termination of his or her parental rights—of his or her common-law right to revoke his or her consent to a settlement agreement prior to the entry of judgment. *See* Tex. Fam. Code Ann. §§ 161.001–. 211, 262.001–.608.

Additional statutory-construction analysis of section 153.0071 and its applicability to termination suits was conducted by the Houston Fourteenth Court of Appeals in *Morris* and by the Texarkana Court of Appeals in *K.D. See Morris*, 498 S.W.3d at 633–34 (recognizing that custody MSAs under section 153.0071, although initially binding, may subsequently be modified while section 153.0071 MSAs utilized in termination suits present modification problems—similar to the 48-month-no-modification provision Mother and Father challenge in this appeal); *K.D.*, 471 S.W.3d at 172–74, n.17 (explaining that section 153.0071 MSAs are not binding in termination suits in part because family code chapters 153 and 161 are not *in pari materia,* that is, they do not share a common purpose and are not intended to be construed together). Without belaboring the statutory-construction analysis conducted by these courts, I would adopt it, along with the statutory-construction analysis set forth above, to hold that section 153.0071 MSAs are not binding—that is, enforceable by a judgment after revocation of consent by a party to the MSA—in termination suits.[12]

---

[12]The absurdity of construing section 153.0071 MSAs as irrevocable at the time of signing in termination suits would be more amply demonstrated if it were the Department seeking to revoke its consent prior to judgment and Mother and Father or even Jane Doe moving for judgment on the MSA.

## IV. MOTHER AND FATHER'S REMAINING POINTS ARE RIPE

The majority opinion holds that Mother and Father's remaining two issues—attacking the MSA's provisions imposing a 48-month limitation on the filing of any motions to modify absent some undefined "emergency"—are not ripe. *See G.V.*, 2017 WL 6422132, at *7–8. I respectfully cannot agree.

Mother and Father contend in their remaining two issues, as they did in the trial court, that the entire MSA is unenforceable because it is void as against public policy.[13] A contention that an entire MSA is void as against public policy is ripe in an appeal from the judgment on the MSA. *See, e.g.*, *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 490–91 (Tex. 2016) (recognizing that when agreement cannot be performed without violating public policy, it is per se void); *C.C.E.*, 530 S.W.3d at 320 (addressing issue of whether certain provision in MSA made the entire MSA unenforceable). Thus, I would address the merits of Mother and Father's remaining two issues.

## V. CONCLUSION

I would grant Mother and Father's motion for rehearing en banc. For the above reasons, I would hold that section 153.0071's MSA provisions cannot be enforced as binding in a chapter 161 termination suit when a party revokes consent prior to judgment on the MSA and that here Mother and Father revoked

---

[13]Mother and Father asserted this argument three times in the trial court: once in their filed, written objections to the MSA; once in their response to the Department's motion to enforce the MSA; and again at the hearing before the trial court on the Department's motion to enforce the MSA.

20

their consent to the MSA in this termination suit before judgment was entered on the MSA. Of course, if no party to a section 153.0071 MSA revokes consent to it prior to judgment, then judgment may be entered on the MSA just as on any other agreed-to settlement.[14] I would also hold that Mother and Father's remaining issues are ripe, and I would address them on the merits. Because a majority of the court holds otherwise, I respectfully dissent.

/s/ Sue Walker
SUE WALKER
JUSTICE

DELIVERED: January 25, 2018

---

[14]*See, e.g.*, *In re A.C.*, No. 05-16-01531-CV, 2017 WL 1684649, *4–5, (Tex. App.—Dallas May 2, 2017, no pet.) (mem. op.) (enforcing MSA terminating mother's parental rights when not objected to prior to judgment); *In re J.R.W.*, No. 05-15-00493-CV, 2015 WL 5050169, at *3 (Tex. App.—Dallas Aug. 27, 2015, pet. denied) (mem. op.) (same).

21

# APPENDIX

"Attachment A"

CAUSE NO. 323-102780-16

| IN THE INTEREST OF | )( | IN THE DISTRICT COURT |
| G.         V.    , III AND | )( | 323RD DISTRICT COURT |
| G         V   , CHILDREN | )( | TARRANT COUNTY, TEXAS |

## BINDING MEDICATED SETTLEMENT AGREEMENT

The parties herein, whose signatures appear below {with Counsel, if present}have entered into the following *binding* settlement agreement pursuant to Chapter 6 and/or 153 [if children are involved] of the Texas Family Code [and pursuant to provisions of Texas Civil Practice and Remedies Code, Section 154.021, *et seq.* if parties assigned Mediator any arbitration duties].

This Binding Settlement Agreement is entered into on this 3rd day of Oct. , 2016. It is understood an agreed by all signatures hereunder that this is a compromise and negotiated settlement of all claims and disputes previously unresolved in this pending cause.

Each signatory represents that he or she has full authority to bind the party or parties for whom such person acts and that no claims, suits, rights or interests which are included within the settlement have been assigned or transferred.

The parties agree that the full settlement is set out on "Attachment A"which instrument follows Pages One and Two of this Binding Settlement Agreement and that it has been made at the location designated herein and that it, and Arbitration if any, is to be construed in accordance with Texas law.

All signatories herein release the Mediator from all liability and responsibility arising from this Binding Settlement Agreement and, by their signatures, each acknowledges that they have been advised that this Binding Settlement Agreement should be reviewed before executing this Binding Settlement Agreement.

EACH PARTY UNDERSTANDS AND AGREES THAT THIS AGREEMENT IS NOT SUBJECT TO REVOCATION AND THAT EACH INTENDS AND AGREES THAT EITHER PARTY IS ENTITLED TO JUDGMENT ON THE MEDIATED SETTLEMENT AGREEMENT UNDER THE PROVISIONS OF LAW, SECTION 6.602, TEXAS FAMILY CODE AND SECTION 153.0071[TFC], IF CHILDREN ARE SUBJECT TO THIS SUIT.

If there is a child or there are children the subject of this Suit, the parties agree that this parenting plan is in the best interest of the subject child or children.
See Texas Supreme Court Case: In Re: Stephanie Lee 9/27/13

Petitioner_____ Respondents_____ Third Party_____Ad Litem_____

Page One of Two
With "Attachment A" [which consists of _____pages]

23

Page Two of Two - <u>Binding Settlement Agreement</u>

<u>CAUSE NO. 323-102780-16</u>

Parties also acknowledge by their signature below that no original documents have been left with the mediator and that the Mediator shall maintain this file for no longer than ninety (90) days from this date. Thereafter, the Mediator's file may be destroyed.

*Fort Word*

Signed at ___*Oct 2nd*___, Texas , on ___*Oct 3rd*___, 2016.

*[signature of Mrs. Jones]* 10/3/16

*[signature of Mr. Jones]* 10/3/16

Petitioner                                    Respondent

_____    _____
Attorney for Petitioner               Attorney for Respondent

<u>Arbitration Option for drafting and execution of this Agreement</u>

All signatories above, by their initials below, agree to use Maryellen W. Hicks as binding Arbitrator for any dispute that arises in the drafting and execution of this Agreement. Said Arbitrator may decide what constitutes substantial compliance with all terms, and any omitted terms, of this Agreement that were discussed and agreed upon in the mediation. Maryellen W. Hicks may make disposing decisions concerning the language of this Order and submit the draft approved by her to the Court for signature and entry.

Parties and/or Counsel herein agree to notify Maryellen W. Hicks, in writing, of their request for her services at least ten days prior to a Court entry date and to deposit $200 [each party] toward the cost of said services before any arbitration services are rendered. Parties and/or Counsel agree to meet with Maryellen W. Hicks at her office, upon Hicks' request and to furnish Hicks with a computer copy and one hard copy of each draft of language in dispute. Parties agree to pay any additional arbitration fees directly to Maryellen W. Hicks on or at the time of entry.

Initials of parties and/or Counsel representing agreement to engage in arbitration option:

_____   _____   _____   _____

*[Signature of Jane Doe]*
*[Jane Doe]*
*Intervener*

*George Griffith Atty for*

*CLIFFORD BRONSON, AD LITEM*

CAUSE NO. 323-162759-16
NAME:           CHILDREN

"ATTACHMENT A"

~ all exclusive rights ~

PMR to [the Joneses]    ~ (PC to Wage Doe) ~
PC to Parents.

Access & Possession for [Father & Mother]
4 hours 9:00 a.m. - 1:00 pm on the 2nd & 4th
Saturdays or ~Sunday~ of each month beginning
Oct. 14, 2016, to be supervised ~by the~ [Joneses] ~ (in e of site)
or [the Smiths]    or [Jane Doe] ~

Possession Schedule for [Jane Doe]    6:00pm
Friday to 6:00 pm Sunday every 6 weeks
beginning Oct. 2, 2016 , [Jane Doe]    shall have
one week in the Summer to travel on family
vacation. [Jane Doe]    shall have Dec. 23 at noon
until Dec. 28 at noon. Parents to have ~Dec 23~ Xmas w/ [Jane Doe]
~along from 9:00 am until 2:00 p.m.~  ~Parents~
~shall have children for children's birthdays~
~from noon - 4:00 p.m.~
Possession / Access at any other times
agreeable by the parties.                Birthdays and

Agreed Supervisor for parents on Christmas
and other periods of possession.
Child support to remain the same.

TriCare & Medicare for children

CAUSE NO. 323-102780-16
NAME:     CHILDREN

[Jane Doe] — summer access
"ATTACHMENT A"

Notice - May 17 — IF not default to

July 1 to July 8 — 6:00pm to 6:00pm

Modification not to be filed unless

emergency — party who filed to pay cost of

~~visitation others~~. mediation.

No Additional visitors at access of pas.
of parents.
No modification until after 4 months.
(October 2020)

Parents Right to receive medical (cus)
and Educational info. only. and can
attend school activities if PMC [Jane Doe or the Smiths]
IF mediation ~~then~~ fails, party
requesting is to pay costs money.

                           months
Parties agree to extension of ~~PMC to CRent~~ [Smiths]
the CPS case with PMC to [Smiths], after the
CPS case ends.

[signature lines — illegible]
[Jane Doe] ... can designate ...
children for her ... [parents]
                                              3:45pm