

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00141-CV

———————————————

IN THE INTEREST OF J.E. AND A.E., CHILDREN

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV22-04-242

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

After a bench trial, the trial court terminated Mother's parental rights to J.E. and A.E.[1] Mother asserts in three issues that the evidence is legally and factually insufficient to support (1) the trial court's findings under Subsections 161.001(b)(1)(E), (O), and (P) of the Texas Family Code; (2) the trial court's finding that she was convicted or placed on community supervision for violating Section 22.041 of the Texas Penal Code; and (3) the trial court's finding that termination is in the children's best interest. We hold that the evidence is legally and factually sufficient to support the Subsection 161.001(b)(1)(E) finding; thus, we need not address the remaining grounds or evidence of Mother's conviction or community supervision, which goes to Subsection 161.001(b)(1)(L). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(L) (permitting termination when parent has been convicted or placed on community supervision for violating certain Penal Code provisions, including Section 22.041). We also hold that the evidence is legally and factually sufficient to support the trial court's best-interest finding under Subsection 161.001(b)(2). Accordingly, we affirm the trial court's judgment.

---

[1]The children's alleged fathers were also named in the petition. The trial court's termination order terminated the parental rights of alleged and unknown fathers. Because the trial court's order disposed of all parties and all issues in the suit, we have jurisdiction over this appeal. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (providing general rule that an appeal may be taken only from a final judgment).

# I. Procedural Background

In April 2022, the Texas Department of Family and Protective Services (the Department) filed a petition to terminate Mother's parental rights to J.E. and A.E. The Department sought termination under Subsections 161.001(b)(1)(E), (L), (O), and (P) of the Texas Family Code.[2] In support of the petition, the Department alleged that a methamphetamine pipe fell out of Mother's pocket while she was dropping off A.E. at daycare in February 2022, that Mother failed hair follicle and urine drug tests in March 2022, and that she had been convicted or placed on community supervision in June 2019 for child endangerment. The children were removed in April 2022 and placed with their maternal grandparents (Grandparents).

The trial court entered temporary orders requiring Mother to submit to a psychological evaluation, attend parenting classes, submit to drug and alcohol assessments and testing, complete substance abuse treatment, comply with the Department's service plan, and provide financial and current residence information to the Department. The Department filed its first amended petition on September 9, 2022, but did not change its allegations regarding Mother. It filed a Notice of Official Change in Permanency Plan on October 28, 2022, to change the primary permanency plan from "Family Reunification" to "Adoption by Relative."

---

[2]The Department also sought termination under Subsections 161.001(b)(1)(D), (K), and (N). The trial court did not find for the Department on these grounds.

A bench trial was held on March 22, 2023, after which the trial court terminated Mother's parental rights to J.E. and A.E.[3] The trial court found grounds for termination under Subsections 161.001(b)(1)(E), (L), (O), and (P) and that termination was in the children's best-interests under Subsection 161.001(b)(2). Mother filed a motion for new trial, which the trial court denied, and this appeal followed.

## II. Standard of Review

For a trial court to terminate a parent–child relationship, the party seeking termination must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *Z.N.*, 602 S.W.3d at 545.

---

[3]Mother did not attend the trial, but it appears from the record that Mother's counsel expected her to attend. When Mother did not appear, her counsel requested a six-month continuance to allow time for Mother to address her "pending criminal case." The trial court noted concerns that it voiced at a prior permanency hearing over "a lack of progress" and asked whether any new evidence of progress would be offered. Mother's counsel responded that Mother was attempting to address her arrest warrant and enter drug treatment. The trial court noted that it was aware of the arrest warrant and denied the requested continuance. Mother does not challenge the trial court's order denying the continuance.

Thus, when reviewing the sufficiency of the evidence to support a termination finding, we ask whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *Z.N.*, 602 S.W.3d at 545. Both legal and factual sufficiency turn on this question; the distinction between the two sufficiency analyses "lies in the extent to which disputed evidence contrary to a finding may be considered" in answering the question. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

In our legal sufficiency analysis, we "look at all the evidence in the light most favorable to the finding," assuming that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so and disregarding all evidence that a reasonable factfinder could have disbelieved. *Z.N.*, 602 S.W.3d at 545; *A.C.*, 560 S.W.3d at 630–31. Factual sufficiency, however, requires "weighing disputed evidence contrary to the finding against all the evidence favoring the finding" to determine if, "in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review.").

Legal and factual sufficiency determinations overlap because factually sufficient evidence is necessarily legally sufficient. *In re A.O.*, No. 02-21-00376-CV, 2022 WL 1257384, at *8 (Tex. App.—Fort Worth Apr. 28, 2022, pet. denied) (mem.

5

op.). Therefore, and because Mother challenges both factual and legal sufficiency, we will conduct a consolidated review. *See id.* (doing same).

### III. Discussion

The trial court found that Mother's actions satisfied four statutory grounds and that termination was in the children's best interests. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (L), (O), (P), (2). Generally, "[t]o affirm a termination judgment on appeal, a court need uphold only one termination ground," plus the best interest finding. *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019). Subsection (M), however, allows a trial court to terminate parental rights when the parent's relationship with another child was terminated based on a finding under Subsection (D) or (E). Tex. Fam. Code Ann. § 161.001(b)(1)(M). Thus, when a parent challenges a Subsection (D) or (E) finding, due process and due course of law demand that we address the finding and detail our analysis. *N.G.*, 577 S.W.3d at 235, 237. Accordingly, we must address the trial court's Subsection (E) finding, even though it may not be dispositive. *See In re C.W.*, No. 02-21-00252-CV, 2022 WL 123221, at *3 n.5 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.); *In re J.B.*, No. 02-21-00239-CV, 2021 WL 6144074, at *20 (Tex. App.—Fort Worth Dec. 30, 2021, pet. denied) (mem. op.).

### A. Conduct-Based Endangerment

In her first issue, Mother contends there is insufficient evidence to support the trial court's finding that she "used a controlled substance in a manner that endangered the health or safety of the children" or "placed her children in a place or with persons

6

whose conduct endangered the physical and emotional well-being of the children." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (P).

### 1. Applicable Law

Subsection (E) requires a finding that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger[ed] the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). To "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re A.N.*, No. 02-22-00036-CV, 2022 WL 2071966, at *3 (Tex. App.—Fort Worth June 9, 2022, pet. denied) (mem. op.).

"Conduct-based endangerment under Subsection (E) requires more than a 'single act or omission'; it requires a 'voluntary, deliberate, and conscious course of conduct.'" *A.N.*, 2022 WL 2071966, at *3 (quoting *J.B.*, 2021 WL 6144074, at *21). "As a course of conduct, evidence of endangerment under Subsection (E) 'is not limited to actions directed towards the child.'" *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 n.43 (Tex. 2021)). It may include "actions before the child's birth, actions while the child is not in the parent's presence, and actions while the child is in the Department's custody." *Id.* (quoting *In re C.Y.*, No. 02-21-00261-CV, 2022 WL 500028, at *2 (Tex. App.—Fort Worth Feb. 18, 2022, no pet.) (mem. op.)). Such actions may "create an inference that similar conduct could recur and further jeopardize a child's well-being." *Id.* (quoting *C.Y.*, 2022 WL 500028, at *2).

## 2. Evidence

The Department began its investigation in response to a report that a methamphetamine pipe fell out of Mother's pocket while she was dropping off A.E. at daycare in February 2022. Mother's caseworker, Sky Mayfield, testified that Mother agreed to a drug test shortly after the investigation began and that she tested positive for methamphetamine on March 14, 2022, and March 25, 2022. Mayfield also testified that the children were staying with Mother at this time, and they were removed in April 2022.

Mayfield expounded on the dangers that a parent using methamphetamine presents to a child: lack of supervision, slow reflexes, falling asleep while caring for the child, and subjecting the child to methamphetamine smoke. She further stated that such dangers create a chaotic and unsafe environment in which the child's needs might not be met. On cross examination, however, Mayfield admitted that the Department's investigation did not uncover evidence that the children were unsupervised or exposed to methamphetamine smoke and that the children were not tested for drugs.

The record also reflects that, at the time of trial, Mother had been habitually using methamphetamine for approximately twenty-five years. The children's maternal grandmother (Grandmother) testified that Mother started using methamphetamine at age fifteen. The record further reflects that Mother took ten random drug tests between March 14, 2022, and December 20, 2022. She tested positive for methamphetamine in five of those tests: March 14, 2022, March 25, 2022, July 28, 2022, September 15, 2022,

8

and December 20, 2022, three months before trial. She also failed to submit to at least fifteen additional drug tests. The trial court could reasonably infer that Mother's failure to submit to these tests indicated that she was using drugs on those dates. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet); *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet). Mother also signed a substance use acknowledgement, indicating that she used methamphetamine on January 2, 2023, two months before trial.

At the outset of the case, the trial court ordered Mother to submit to a drug assessment. Mayfield testified that Mother complied with this order and entered rehabilitation in July 2022, but relapsed and was supposed to complete a second assessment. She failed to do so.

The record also reflects that Mother's behavior changed dramatically when she was using methamphetamine. Mayfield testified that Mother initially "had good behavior," made progress on her services, and showed potential to care for the children when she was testing negative for drugs. When she was testing positive, however, Mother's behavior became "very erratic." According to Mayfield, Mother "would be angry, yell and cuss at the caseworkers [and] the front desk staff." Mayfield said that, on more than one occasion, Mother "scream[ed] and cuss[ed]" at her, called her "a stupid F'ing B," "yell[ed] and kick[ed]" at her, "kicked the office door open and was screaming and yelling at the [Department's front desk] staff."

Grandmother also described an incident that further demonstrated the erratic behavior Mother exhibited when taking drugs. Specifically, approximately a month before the March 2023 trial, Mother appeared on a third-floor balcony at Grandmother's house. Although Mother had been permitted to visit the children at Grandparent's house on weekends, the Department suspended that privilege in January 2023 due to Mother's drug use.

Photographs of Grandmother's house admitted at trial show a house with a small third-floor balcony above a large second-floor balcony above a large ground-floor patio. Grandmother testified that it was dark outside and she was getting the children ready for bed when she heard a knock on the third-floor balcony door at approximately 7:30 p.m. J.E. responded to the knock and discovered it was Mother. Grandmother testified that she had no idea how Mother scaled the back of the house to the third-floor balcony, stating, "[H]ow does a person do that without falling to their death?" She opined that Mother would not have done something like that when she was not taking drugs. Grandmother also noted that the children seemed to think Mother's behavior that night was normal.

Grandmother further stated that she worried for her grandchildren because of Mother's erratic behavior, which had escalated as the trial date neared. She also said that she worried about the children's safety and her own, noting that she had submitted a police report in response to certain threats that Mother had made. Grandmother did not expound on the threats.

10

The record also reflects that Mother was on probation at the time of trial for a 2019 child-endangerment charge concerning J.E. Although documentary evidence of the 2019 charges was not offered into evidence, Mayfield testified that she had communicated with Mother's probation officer, that drug treatment was a condition of her probation, and that an arrest warrant had been issued due to Mother's failed December 20, 2022 drug test. She further testified that J.E. was old enough to remember being removed from Mother in 2019. Mayfield said that J.E. worried about Mother, was angry with her, and was in therapy to address these issues and the trauma from being removed from Mother.

### 3. Application

On appeal Mother does not contest evidence of her drug use but contends there is no evidence of a causal link between her drug use and any child endangerment. Specifically, she contends there is no evidence that she used drugs around her children, allowed her children to be around drugs or drug users, or was unable to care for her children because of her drug use. She further contends that the children were not present during her periods of erratic behavior described at trial. By this, she appears to equate Subsection (E) endangerment with actual injury. A course of conduct that "expose[d]" the children to "loss or injury," however, is sufficient to satisfy Subsection (E). *Boyd*, 727 S.W.2d at 533; *A.N.*, 2022 WL 2071966, at *4. "[I]t is not necessary that . . . the child[ren] actually suffer[ed] injury." *Boyd*, 727 S.W.2d at 533.

11

"Drugs and their effect on a person's ability to parent may qualify as an endangering course of conduct." *In re A.K.*, No. 02-22-00154-CV, 2022 WL 4545571, at *5 (Tex. App.—Fort Worth Sept. 29, 2022, pet. denied) (mem. op.) (citing *In re M.M.*, No. 02-21-00185-CV, 2021 WL 5227177, at *5 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.)). Because using illegal drugs exposes children to the possibility that the parent may be impaired or imprisoned, their use may support termination under Subsection (E). *M.M.*, 2021 WL 5227177, at *5 (citing *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617–18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). Evidence that a parent continued to use illegal drugs even though she knew that her parental rights were in jeopardy demonstrates a voluntary, deliberate, and conscious course of conduct that endangers a child's well-being. *A.K.*, 2022 WL 4545571, at *5.

Throughout the pendency of this suit, Mother used methamphetamine despite knowing that her parental rights were in jeopardy. Furthermore, she continued to use drugs despite the risk of being arrested for violating the terms of her probation. Indeed, there is evidence in the record that she did not appear for trial because of that risk. Thus, the prospect of Mother's incarceration further supports an endangerment finding. *See J.F.-G.*, 627 S.W.3d at 313 ("[I]incarceration does support an endangerment finding if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." (internal citation and quotation marks omitted)).

Methamphetamine addiction can wreak havoc not only on the addict but on the addict's family, and young children, such as J.E. and A.E., are particularly vulnerable. *See M.M.*, 2021 WL 5227177, at *6. "The danger here is more than 'metaphysical,' and more is at stake than a less-than-ideal family environment." *Id.*; *see Boyd*, 727 S.W.2d at 533 ("'[E]ndanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, [but] it is not necessary that the conduct be directed at the child or that the child actually suffers injury."). The evidence reflects that Mother's drug use caused erratic, risky, and, sometimes, violent behavior. Although most of her erratic behavior testified about at trial was directed at the Department's staff and not witnessed by the children, her third-floor visit to Grandmother's house was witnessed by the children. Additionally, J.E. was old enough to remember being removed from Mother in 2019. And the record reflects that he was in therapy at the time of trial to address trauma from the removals, his anger, and his worry for Mother. Regardless, it is not necessary that the children suffer actual injury from Mother's behavior. *See Boyd*, 727 S.W.2d at 533. Accordingly, we hold that the evidence is legally and factually sufficient to show that Mother engaged in a course of conduct that endangered her children's physical or emotional well-being. *See Z.N.*, 602 S.W.3d at 545; *A.C.*, 560 S.W.3d at 630–31.

To affirm a parental-rights termination, we need to ensure that the evidence is sufficient as to only one ground and the best-interest finding. *M.M.*, 2021 WL 5227177, at *6; *A. C. v. Tex. Dep't of Family & Protective Servs.*, 577 S.W.3d 689, 698–99 & n.2 (Tex.

13

App.—Austin 2019, pet. denied). Because we have held that the evidence is legally and factually sufficient under the Subsection (E) ground—one of the grounds that must be addressed when there are multiple grounds—we need not address the remaining three grounds. *See* Tex. R. App. P. 47.1; *N.G.*, 577 S.W.3d at 237 n.1. Accordingly, we overrule the portion of Mother's first issue challenging the Subsection (E) finding, and we do not reach the remainder of Mother's first issue or her second issue.

## B. Best Interest of the Children

In her third issue, Mother contends that the evidence is insufficient to support the trial court's finding that termination is in the children's best interest.

### 1. Applicable Law

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *A.C.*, 560 S.W.3d at 631. In determining whether evidence is sufficient to support a best-interest finding, we review the entire record. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). Evidence probative of a child's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *Id.* at 249; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the child's best interest:

(A)　the child's desires;

14

(B)     the child's emotional and physical needs now and in the future;

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the child's best interest;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one; and

(I)      any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"). These factors are not exhaustive, and some may not apply to particular cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, "paltry evidence relevant to each" factor will not support such a finding in cases involving more complex facts. *Id.*

### 2. Evidence

In April 2022, the Department removed the children from Mother's home and placed them with Grandparents. Mayfield testified that A.E. did not have any special needs but was in therapy. She further testified that A.E. was initially "super shy" but had "come out of her shell" with therapy. Mayfield said that J.E. was also in therapy

15

and taking medication to address the trauma from being removed from Mother. She also said that J.E. was angry with Mother, and that Mother's behavior had caused J.E. emotional trauma. Mayfield indicated that the Grandparents were providing for the children's needs and that both children were bonded to the Grandparents.

When asked whether the children love their mother and would like to be with her, Mayfield said, "Of course." According to Mayfield, however, Mother did not have the ability to care for them. She noted that the trial court had ordered Mother to complete parenting classes but that Mother had not done so, despite enrolling four times.

Mother was ordered to complete various other services, including therapy, drug testing, and substance abuse treatment. The Department's Family Plan identified providers through which Mother was to complete those services. Mother did not complete them. Indeed, she did not participate in any substance abuse treatment after her July 2022 relapse.

Mother was also required to obtain steady income. Mayfield testified that Mother reported that she was working at a truck stop but never produced a paycheck to prove it. Mayfield also testified that Mother was living with her father at the start of the case and had purportedly moved to Chico, Texas, before the last permanency hearing. At the time of trial, however, Mayfield did not know where Mother was living.

Mayfield opined that Grandparents should adopt the children to give them permanency. She described the children's life with Grandparents, indicating that J.E.

16

was doing well in school and that A.E. had a new "favorite thing" each time Mayfield visited. She also noted that Grandparents were almost licensed to adopt. In Mayfield's opinion, it was in the children's best interest to terminate Mother's parental rights and permanently place the children with Grandparents.

CASA advocate Justin Gillum testified that he had spent "a lot of time" with the children and that they were doing well, bonded to Grandparents, and receiving medical care and therapy that they needed. He also described J.E.'s improvement, stating that J.E. had been "struggling a little bit with all of this going on" but was "doing a lot better" through therapy. Gillum echoed Mayfield's testimony that A.E. had "come out of her shell." He agreed that it was in the children's best interest to remain with Grandparents.

Grandmother testified she wanted the children to have a "safe and happy home and to know that they belong." She indicated that she was concerned about how the children would react to no longer seeing their mother, and that was why they were in counseling. She said that she had a good relationship with their counselor and planned to keep them in counseling. When asked whether she would "love to see [Mother] doing well enough to have a relationship with her kids," Grandmother responded, "Oh, yes."

### 3. Application

#### a. Children's Desires

At the time of the March 2023 trial, J.E. was nine years old, and A.E. was several months away from her fourth birthday. Both lacked sufficient maturity to express an

17

opinion regarding a parental preference, and neither testified at trial. *See A.K.*, 2022 WL 4545571, at \*3; *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.); *cf.* Tex. Fam. Code. Ann. § 153.134(a)(6) (a child must be at least twelve years old before the child's preference, if any, regarding the person to have the exclusive right to designate the child's primary residence becomes a factor), § 156.101(a)(2) (same). This factor is neutral.

### b. Children's Emotional and Physical Needs Now and In the Future

At the time of trial, both children were in therapy to address issues related to the termination of Mother's parental rights. The record also reflects that J.E. was traumatized by Mother's behavior, and that he was receiving therapy and taking medications to address his anger toward Mother. Grandmother indicated she would continue the children's therapy to address issues related to the termination. No other emotional or physical needs were identified, but the children's youth places a premium on parental abilities and the stability of their home to address issues related to Mother's behavior. This factor weighs in favor of the trial court's best-interest finding.

### c. Emotional and Physical Danger to the Children Now and in the Future

Evidence of Mother's long history of methamphetamine use, including her use during the pendency of the suit, indicates that she will likely continue using drugs. This fact alone could constitute a danger to the children. *See M.M.*, 2021 WL 5227177, at \*6. Additionally, there was evidence that Mother violated the terms of her probation by

testing positive for methamphetamines in December 2022, and that an arrest warrant had been issued. As we previously noted, the prospect of Mother's subsequent incarceration would support an endangerment finding. *See J.F.-G.*, 627 S.W.3d at 313. This factor weighs in favor of the trial court's best-interest finding.

### d. Parental Abilities of the Individuals Seeking Custody

Grandparents had been parenting the children for almost a year before trial. The testimony reflects that Grandparents had been providing for the children's needs, and that the children had bonded to Grandparents. Grandmother's testimony demonstrated a desire for the children to be safe and develop a sense of belonging. Despite Mother's threats and erratic behavior, Grandmother testified that she hoped Mother could get clean so she could see her children. Mother, however, had not completed the parenting classes ordered by the trial court and had persisted in her methamphetamine use. This factor weighs in favor of the trial court's best-interest finding.

### e. Programs Available to Assist These Individuals to Promote the Children's Best Interest

Mother did not complete the services ordered by the trial court. She failed to even start some services, such as substance abuse treatment. Based on this evidence, the trial court could have concluded that even if programs were made available to Mother, the programs would not benefit her. This factor weighs in favor of the trial court's best-interest finding.

### f. The Plans for the Children by These Individuals or the Agency Seeking Custody

Grandparents had been parenting the children for almost a year before trial and were becoming licensed to adopt the children. Grandmother also testified that she had a good relationship with their counselor and planned to keep them in counseling. In contrast, Mother had been living with her father at the start of the case in April 2022. She had moved out at some point, but her whereabouts at the time of trial were unknown. She also did not provide evidence of employment to the Department or complete the services offered in the Department's Family Plan, which included parenting classes. This factor weighs in favor of the trial court's best-interest finding.

### g. Stability of the Home or Proposed Placement

"[C]hildren need permanency and stability." *In re G.V., III*, 543 S.W.3d 342, 350 (Tex. App.—Fort Worth 2017, pet. denied). "A child's need for permanence through the establishment of a stable, permanent home is a paramount consideration in the best-interest determination." *M.M.*, 2021 WL 5227177, at *8 (citing *E.R.W.*, 528 S.W.3d at 267). The record reflects that Mother has had many years to get clean and establish a stable home, and yet she has not. In contrast, Grandparents had provided a stable, safe environment in which the children were thriving. The trial court heard no evidence to the contrary. This factor weighs in favor of the trial court's best-interest finding.

### h. Parent's Acts or Omissions that May Indicate that the Existing Parent-Child Relationship is Not a Proper One and Parent's Excuse, If Any, for the Acts or Omissions

Mother's methamphetamine addiction is well documented in the record. She failed or failed to submit to multiple drug tests, and she failed to complete substance abuse treatment. Her erratic and risky behavior associated with her methamphetamine use further underscores the detrimental effect that her addiction has had on her and the children. Drug abuse aside, Mother failed to complete parenting classes or therapy, and there is no evidence that she has obtained safe housing or stable employment. No excuse was offered at trial for any of these acts or omissions. This factor weighs in favor of the trial court's best-interest finding.

### i. Holding

Stability and permanence are paramount in a child's upbringing. *In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (per curiam). Mother cannot provide either. There is no evidence that she can provide a safe home. Even if she had found a home, a reasonable factfinder could conclude that it would not be safe because of her drug addiction and associated erratic behavior. From the lack of evidence that Mother obtained stable employment, a factfinder could also reasonably conclude that any such home would be temporary. Indeed, Mother purportedly moved twice during the case, and her whereabouts were unknown at the time of trial. Evidence that Mother faced incarceration for using drugs while on probation further underscores Mother's inability to provide the children with stability and permanence. In contrast,

Grandparents exhibited a willingness and ability to provide just that. Accordingly, we hold that the evidence is legally and factually sufficient to show that terminating Mother's parental rights was in the children's best interest. *See A.C.*, 560 S.W.3d at 631.

We overrule Mother's third issue.

## IV.    Conclusion

Having overruled part of Mother's first issue and her third issue, which are dispositive, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: August 10, 2023